[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DECEMBER 3, 2007
THOMAS K. KAHN
CLERK

_____

No. 07-12000
Non-Argument Calendar

_____

BIA Nos. A79-476-524 & A79-476-525

FLAMINIO TORRES,
GLORIA INES ROA,
SERGIO ANDRES TORRES,
DANIEL FELIPE TORRES,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

**(December 3, 2007)**

Before TJOFLAT, HULL and PRYOR, Circuit Judges.

PER CURIAM:

Flaminio Torres and his wife, Gloria Ines Roa, and children, Sergio Andres Torres and Daniel Felipe Torres, through counsel, petition for review of the Board of Immigration Appeal's ("BIA") decision affirming the Immigration Judge's ("IJ") order denying their application for asylum and withholding of removal under the Immigration and Nationality Act ("INA"), and relief under the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment ("CAT"), INA §§ 208, 241, 8 U.S.C. §§ 1158, 1231; 8 C.F.R. § 208.16(c).[1]  After review, we grant Torres's petition.

## I.Torres's Evidence

Torres, a native and citizen of Colombia, testified that he was persecuted on account of his political opinion.[2]  According to Torres, he was a leader in a political movement affiliated with the Liberal Party of Colombia, and his political activities resulted in his persecution by the Revolutionary Armed Forces of Colombia ("FARC").  Torres testified that he became affiliated with the Momiento Civico Colajuno political movement in 1996, and that he supported Pedro

---

[1]The claims of Torres's family rely on Torres's claims, and thus we refer only to "Torres" in this opinion, except where otherwise noted.

[2]While Torres also indicated on his asylum application that he was persecuted on account of membership in a particular social group, Torres's petition for review only addresses persecution on account of political opinion, and so we do not address Torres's membership in a social group.

Orjuelo's campaign for councilman in approximately 1997, as well as Antonio Galan-Sarmiento's campaign for councilman in approximately 2000.

Torres testified about several incidents relating to his asylum claim. First, Torres explained that in October 1997, he attended a meeting in his hometown of Mesitas Del Colegio, and at the meeting, he was in charge of distributing pamphlets and other political propaganda for Orjuleo. Torres testified that upon leaving the meeting, his car was cut off by a jeep, and three men wearing military uniforms exited the jeep, pointed rifles at Torres, forced him out of his car, and pushed him to the ground. They looked through Torres's political materials, warned him to stop causing problems in town, kicked him in the ribs, and took his car keys. Torres's asylum application states that these men identified themselves as FARC members.

In a second incident later in October 1997, three self-identified FARC members approached Torres while he was at a restaurant and told him he had to go with them. Torres escaped through a back door. That night, Torres's wife received a telephone call during which the caller told her that Torres was a "coward" and could not hide, and the next day, Torres decided to move from Mesitas Del Colegio to Bogota.

A third incident occurred in March 1998, while Torres was visiting Mesitas Del Colegio with his wife and mother-in-law. Two self-identified FARC members

3

approached Torres at a market and instructed Torres to accompany them. After Torres's wife started screaming and a number of people crowded around, the FARC members ran away. Torres went to the police to report the incident, and the police told him that they would look for the two FARC members but refused to draw up an official police report because such incidents "happened frequently in town." A few months thereafter, in August 1998, Torres's wife received a threatening phone call from the FARC at their home in Bogota, and the FARC told Torres's wife that he could not hide from them.

The fourth and final incident detailed by Torres in his testimony and asylum application occurred in July 2000, when two gunshots were fired at Torres's vehicle from an adjacent vehicle. Torres's car was struck by the bullets, and he sped away, thinking that the gunman was trying to rob or kill him. That night, Torres received a phone call from the FARC telling him that he was a "military target" and that he would not be able to escape. Torres then came to the United States and has not returned to Colombia since.

The IJ (1) found that Torres's testimony was "largely consistent" with his asylum application, but still (2) denied Torres asylum, concluding that Torres did not meet his "burden of proof and persuasion" to show that he had been persecuted by the FARC.

## II. Standard of Review

4

When the BIA issues a decision, we review only that decision, except to the extent that the BIA expressly adopts the IJ's decision. Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001). Here, because the BIA expressly adopted the IJ's decision, we review the IJ's decision.

To the extent that the IJ's decision was based on legal determinations, our review is de novo. Mohammed v. Ashcroft, 261 F.3d 1244, 1247-48 (11th Cir. 2001). The IJ's factual determinations are reviewed under the substantial evidence test, and we "must affirm the [IJ's] decision if it is 'supported by reasonable, substantial, and probative evidence on the record considered as a whole.'" Al Najjar, 257 F.3d at 1284 (citation omitted). The substantial evidence test is deferential and does not allow "re-weigh[ing] the evidence from scratch." Mazariegos v. U.S. Att'y Gen., 241 F.3d 1320, 1323 (11th Cir. 2001) (internal quotations omitted).

"To reverse the IJ's fact findings, we must find that the record not only supports reversal, but compels it." Mendoza v. U.S. Att'y Gen., 327 F.3d 1283, 1287 (11th Cir. 2003). The fact that evidence in the record may also support a conclusion contrary to the administrative finding is not enough to justify a reversal. Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004). Because we cannot make factual findings in the first instance, if the IJ failed to make necessary factual

5

findings, remand to the BIA for such findings is appropriate. Sanchez Jimenez v. U.S. Att'y Gen., 492 F.3d 1223, 1236 (11th Cir. 2007).

### III. Credibility

It is the fact finder's duty to determine credibility. Yang v. U.S. Att'y Gen., 418 F.3d 1198, 1201 (11th Cir. 2005). Here, the IJ failed to make a "clean" adverse credibility finding. Id. Instead, the IJ found that Torres's testimony was "mostly consistent with his written application." Thus, we must accept Torres's testimony as credible for purposes of this appeal. See id.; see also Niftaliev v. U.S. Att'y Gen., __ F.3d __, 2007 U.S. App. LEXIS 24195, at *12 (11th Cir. Oct. 16, 2007); Mejia v. U.S. Att'y Gen., 498 F.3d 1253, 1257 (11th Cir. 2007).

### IV. Torres's Asylum Claim

Any alien who is physically present in or arrives in the United States may apply for asylum. INA § 208(a)(1), 8 U.S.C. § 1158(a)(1). Any alien may establish eligibility for asylum if he shows that he has suffered "past persecution" or has a "well-founded fear" of future persecution." 8 C.F.R. § 208.13(a), (b). To establish asylum eligibility, the alien must, with specific and credible evidence, establish past persecution, or a "well-founded fear" of future persecution, on account of "race, religion, nationality, membership in a particular social group, or political opinion." 8 C.F.R. § 208.13(a), (b); INA § 101(a)(42)(A), 8 U.S.C. § 1101(a)(42)(A).

6

The burden is on the alien to establish asylum eligibility. Al Najjar, 257 F.3d at 1284. The alien can carry this burden solely through his testimony if it is credible, specific, and persuasive. INA § 208(b)(1)(B)(ii), 8 U.S.C. § 1158(b)(1)(B)(ii); see Yang, 418 F.3d at 1201-02; Al Najjar, 257 F.3d at 1287. While credible testimony may be sufficient alone to sustain the applicant's burden of proof for asylum, "[t]he weaker an applicant's testimony, . . . the greater the need for corroborative evidence." Yang, 418 F.3d at 1201.

Although the INA and the regulations do not define "persecution," we have indicated that "persecution is an extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation, and that mere harassment does not amount to persecution." Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1231 (11th Cir. 2005) (quotation marks and citation omitted).

A "well-founded fear" of future persecution may be established by showing (1) past persecution that creates a presumption of a "well-founded fear" of future persecution, (2) a reasonable possibility of personal persecution that cannot be avoided by relocating within the subject country, or (3) a pattern or practice in the subject country of persecuting members of a statutorily defined group of which the alien is a part. See 8 C.F.R. § 208.13(b)(1), (2), (3)(i). Once the alien demonstrates his well-founded fear of future persecution, the burden shifts to the government to show by a preponderance of the evidence that (1) there is a

7

fundamental change in circumstance such that the alien no longer has a well-founded fear of future persecution, or (2) the alien could avoid future persecution by relocating to another part of his country or place of last habitual residence and under all the circumstances it would be reasonable to expect the alien to do so. 8 C.F.R. § 208.13(b)(1)(i).

Based on our precedent, we conclude that the record as a whole compels a determination that Torres suffered past persecution by the FARC. Specifically, Torres's undisputed, consistent, and detailed testimony regarding the July 2000 shooting incident (further detailed in his application documents) and three other separate incidents involving the FARC (including one in which he was pushed to the ground at gunpoint and kicked), cumulatively compels a finding that Torres suffered past persecution by the FARC in Colombia. See Mejia, 498 F.3d at 1257-58; Sanchez Jimenez, 492 F.3d at 1233; Ruiz v. Gonzales, 479 F.3d 762, 766 (11th Cir. 2007). In short, Torres's evidence cumulatively includes not only the shooting incident, but also an incident in which he was stopped and actually attacked by the FARC; two incidents in which he was confronted personally by the FARC but escaped without harm; and multiple threatening phone calls from the FARC to do further harm.

Given that Torres has established past persecution by the FARC, he is entitled to the rebuttable presumption of a well-founded fear of persecution in

8

Colombia, and the BIA and in turn the IJ must allow the government to attempt to rebut this presumption.

## V. Torres's Withholding of Removal and CAT Claims

To qualify for withholding of removal under the INA, an alien must show that his or her life or freedom would be threatened on account of race, religion, nationality, membership in a particular social group, or political opinion. INA § 241(b)(3), 8 U.S.C. § 1231(b)(3). The evidentiary burden for withholding of removal is greater than that imposed for asylum; accordingly, if an alien has not met the well-founded fear standard for asylum, he generally cannot meet the standard for withholding of removal. Al Najjar, 257 F.3d at 1292-93.

Here, the IJ denied Torres's application for withholding of removal based solely on the asylum findings discussed above. Thus, on remand, the IJ should make independent findings regarding Torres's application for withholding of removal.[3]

We grant the petition, vacate the denial of Torres's application for asylum and for withholding of removal, and remand the case to the BIA to remand to the IJ for further proceedings.

**PETITION GRANTED; VACATED AND REMANDED.**

---

[3]Torres only mentions the IJ's denial of CAT relief in passing in his brief before this Court. When a party fails to offer argument on an issue, or mentions it only in passing references, the issue is deemed abandoned. See Sepulveda, 401 F.3d at 1228 n.2. As such, Torres has abandoned any challenge to the IJ's denial of CAT relief.