[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
March 19, 2008
THOMAS K. KAHN
CLERK

No. 07-12057
Non-Argument Calendar
_____

Agency No. A96-110-849

ANNELA ADAMSON,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

**(March 19, 2008)**

Before ANDERSON, MARCUS and WILSON, Circuit Judges.

PER CURIAM:

Annela Adamson, a native and citizen of Estonia, seeks review of the Board

of Immigration Appeals's (BIA) decision, affirming the immigration judge's (IJ) denial of her application for withholding of removal and relief under the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment (CAT). The courts below found that she did not establish a nexus between her past persecution, or fear of future persecution if returned to Estonia, and a protected ground for relief, or that her alleged torture was conducted with the acquiescence of the government. In Estonia, Adamson was a police investigator prior to her conviction as an accomplice in her then fiancé's embezzlement of funds from a company run by local organized crime members. Following the embezzlement, Adamson was kidnaped, beaten, and threatened by mafia members seeking the return of the missing funds.

On appeal, Adamson argues that she is entitled to withholding of removal because she is a member of a particular social group – whistle-blowing police officers who expose government corruption – and that she established a nexus between this status and her persecution.

"[We] review[] administrative fact findings under the highly deferential substantial evidence test," which requires that the record evidence be viewed in the light most favorable to the agency's decision. Adefemi v. Ashcroft, 386 F.3d 1022, 1026-27 (11th Cir. 2004) (en banc). "To conclude that the BIA's decision should be reversed, we must find that the record not only supports the conclusion,

2

but compels it." Niftaliev v. U.S. Att'y Gen., 504 F.3d 1211, 1215 (11th Cir. 2007) (internal quotations and citation omitted). "[T]he mere fact that the record may support a contrary conclusion is not enough." Adefemi, 356 F.3d at 1027. We lack jurisdiction to consider an issue that was not raised before the BIA, and we only review the BIA's decision, unless the BIA expressly adopted the IJ's decision. Ruiz v. Gonzales, 479 F.3d 762, 765 (11th Cir. 2007); Fernandez-Bernal v. Att'y Gen. of U.S., 257 F.3d 1304, 1317 n.13 (11th Cir. 2001). "Insofar as the [BIA] adopts the IJ's reasoning, we will review the IJ's decision as well." Al Najjar v. Aschroft, 257 F.3d 1262, 1284 (11th Cir. 2001). An issue not argued in a petitioner's initial brief before us is abandoned. Id. at 1283 n.12.

"To obtain withholding of removal, an applicant must establish that her 'life or freedom would be threatened in that country because of [her] race, religion, nationality, membership in a particular social group, or political opinion.'" Tan v. U.S. Att'y Gen., 446 F.3d 1369, 1375 (11th Cir. 2006) (quoting 8 U.S.C. § 1231(b)(3)(A)). The burden of proof is on the alien to show that it is "more likely than not" that, upon return to her country, she will be persecuted. Id. If the alien demonstrates that the past persecution was, at least in part, based on a protected ground, "a rebuttable presumption arises that she has a well-founded of future persecution, and the burden then shifts to the Department of Homeland Security to show that the conditions in the country have changed." Id. An alien

3

must demonstrate a nexus between her past persecution and one of the five protected grounds, not just that she was persecuted for not cooperating with her persecutors.  See Sanchez v. U.S. Att'y Gen., 392 F.3d 434, 438 (11th Cir. 2004). The BIA has defined "persecution on account of membership in a particular social group" as "persecution that is directed toward an individual who is a member of a group of persons all of whom share a common, immutable characteristic . . . that either is beyond the power of an individual to change or that is so fundamental to his identity or conscience that it ought not be required to be changed."  Matter of Acosta, 19 I. & N. Dec. 211, 233-34 (BIA 1985), overruled on other grounds by Matter of Mogharrabi, 19 I. & N. Dec. 439 (BIA 1987); see also Castillo-Arias v. U.S. Att'y Gen., 446 F.3d 1190, 1196-97 (11th Cir.2006) (finding this definition reasonable), cert. denied,  127 S.Ct. 977, 166 L.Ed.2d 709 (2007).

Substantial evidence supports the BIA's conclusion that Adamson failed to show a nexus between her persecution and a protected ground, as her own testimony was that the kidnapings, beatings, and threats were related to the missing money, and not her position as a police investigator.

Adamson next argues that she presented substantial evidence that it is more likely than not that she will be tortured if she is returned to Estonia.  "To be eligible for relief under the CAT, an applicant must establish 'that it is more likely than not that he or she would be tortured if removed to the proposed country of

4

removal.'" Sanchez Jimenez v. U.S. Att'y Gen., 492 F.3d 1223, 1239 (11th Cir. 2007) (quoting 8 C.F.R. § 208.16(c)(2)). The agency must consider all relevant evidence when making its assessment of whether it is more likely than not that the applicant will be tortured if returned to her home country. 8 C.F.R. § 1208.16(c)(3). Such evidence includes, but is not limited to, evidence of past persecution and information regarding the conditions in the country of removal. Id. § 1208.16(c)(3)(i), (iv). The regulations define "torture" as:

> any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as obtaining from him or her or a third person information or a confession, punishing him or her for an act he or she or a third person has committed or is suspected of having committed, or intimidating or coercing him or her or a third person, or for any reason based on discrimination of any kind, when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity . . . . [Torture] is an extreme form of cruel and inhuman treatment and does not include lesser forms of cruel, inhuman or degrading treatment or punishment . . . . Torture does not include pain or suffering arising only from, inherent in or incidental to lawful sanctions.

8 C.F.R. § 1208.18(a)(1)-(3).

"Acquiescence of a public official requires that the public official, prior to the activity constituting torture, have awareness of such activity and thereafter breach his or her legal responsibility to intervene to prevent such activity." Id. § 208.18(a)(7). We have affirmed the BIA's finding that a government does not acquiesce to torture where the government "actively, albeit not entirely

5

successfully, combats" illegal activities, and we have held that the IJ may "rely heavily" on reports prepared by the U.S. Department of State admitted into evidence when determining whether the government is combating private actors' illegal activities. Reyes-Sanchez v. U.S. Att'y Gen., 369 F.3d 1239, 1243 (11th Cir. 2004) (quotation marks omitted).

We have held that the BIA's determination that beating an applicant with fists, sticks and belts did not rise to the level of torture, but "vicious and deliberate acts, such as burning with cigarettes, choking, hooding, kalot marassa, and electric shock" do constitute torture. Cadet v. Bulger, 377 F.3d 1173, 1194-95 (11th Cir. 2004). We also have determined that a pattern of threatening phone calls is insufficient to establish torture. Sanchez v. United States Att'y Gen., 392 F.3d 434, 436, 438 (11th Cir. 2004).

Substantial evidence supports the agency's decision that the record does not support a finding that it is "more likely than not" that Adamson will be tortured with the acquiescence of the government if she is returned to Estonia. Based on her testimony, it does not appear that Adamson was tortured when she was in Estonia. Even assuming that she was tortured while there, the Department of State's 2003 Country Report on Human Right Practices in Estonia states that torture is against the law, and the government prosecutes officials who use excessive force. The report also states that corruption among the police is

generally not a problem, and the fact that Estonia prosecutes police for using excessive force supports the finding that the government does not acquiesce in the use of torture. The agency was entitled to rely heavily upon this report and coupled with Adamson's admission that it was unlikely anything would happen to her if she did not attack her former supervisors in the media, we hold that she has not met her burden of showing that it is more likely than not that she will be tortured by the government upon her return to Estonia.

**PETITION DENIED.**[1]

---

[1] Adamson's request for oral argument is denied.