[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPT 17, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-15527
Non-Argument Calendar
_____

Agency No. A79-297-952

HONG E. JIANG,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

**(September 17, 2008)**

Before BIRCH, CARNES and PRYOR, Circuit Judges.

PER CURIAM:

Hong E. Jiang seeks review of the IJ's and BIA's decisions denying her

application for asylum, withholding of removal, and relief under the Convention

Against Torture (CAT). Jiang contends that the IJ erred by: (1) making an adverse

credibility determination against her with respect to her coercive family planning

policies claim without specific, cogent reasons; and (2) denying her relief with

respect to her claim of religious persecution.[1]

## I.

Jiang first contends with respect to her claim of persecution based on

China's allegedly coercive family planning policies that the IJ erred by making an

adverse credibility determination against her. We review the BIA's decision,

except to the extent that it expressly adopts the opinion of the IJ. Al Najjar v.

Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001). "Insofar as the [BIA] adopts the

IJ's reasoning, we will review the IJ's decision as well." Id. Here, the BIA

adopted much of the IJ's reasoning but also issued its own opinion, so we will

review both the BIA's and IJ's decisions. See id.

We review de novo the IJ's and BIA's legal determinations. See Yang v.

United States Att'y Gen., 418 F.3d 1198, 1201 (11th Cir. 2005). We review the

IJ's and BIA's factual determinations under the substantial evidence test, and we

---

[1] Jiang also includes one sentence in her brief laying out an alien's burden of proof for a CAT claim. However, she does not present any arguments challenging the IJ's and BIA's denial of her CAT claim, so she has abandoned this issue. See Sepulveda v. United States Att'y Gen., 401 F.3d 1226, 1228 n.2 (11th Cir. 2005) ("When an appellant fails to offer argument on an issue, that issue is abandoned.").

must affirm the IJ's and BIA's decisions if they are "supported by reasonable, substantial and probative evidence on the record considered as a whole." Antipova v. United States Att'y Gen., 392 F.3d 1259, 1261 (11th Cir. 2004) (citation omitted); Al Najjar, 257 F.3d at 1283–84.  Under the substantial evidence test, the record is reviewed in the light most favorable to the IJ's and BIA's decisions and we draw all reasonable inferences in favor of those decisions.  Id.  "To reverse the IJ's [and BIA's] fact findings, we must find that the record not only supports reversal, but compels it."  Mendoza v. United States Att'y Gen., 327 F.3d 1283, 1287 (11th Cir. 2003) (considering withholding of removal claim).  We review the IJ's and BIA's credibility determinations under the substantial evidence test.  D-Muhumed v. United States Att'y Gen., 388 F.3d 814, 818 (11th Cir. 2004).

The IJ must make an explicit credibility determination, which will be viewed as conclusive unless a reasonable factfinder would be compelled to conclude to the contrary.  Yang, 418 F.3d at 1201.  If the IJ does not make a specific finding as to credibility, the petitioner's testimony is presumed to be credible.  See Niftaliev v. United States Att'y Gen., 504 F.3d 1211, 1216 (11th Cir. 2007).

"Once an adverse credibility finding is made, the burden is on the applicant alien to show that the . . . credibility decision was not supported by specific, cogent reasons or was not based on substantial evidence."  Forgue, 401 F.3d at 1287 (internal quotation marks omitted).  An adverse credibility determination alone

3

may be the basis for denying an asylum application if the applicant produces no evidence other than his testimony.  Id.  If the applicant produces additional evidence it must be considered by the IJ, and the IJ may not rely solely on an adverse credibility determination in denying relief.  Id.  Where, as in Jiang's case, a petition for asylum is filed before May 11, 2005,[2] some circuits have required an adverse credibility finding to go to the heart of the asylum claim.  See, e.g., Gao v. Ashcroft, 299 F.3d 266, 272 (3d Cir. 2002); Gui v. Immigration & Naturalization Serv., 280 F.3d 1217, 1225 (9th Cir. 2002).  We, however, have not adopted that test.

An alien who arrives in or is present in the United States may apply for asylum.  8 U.S.C. § 1158(a)(1).  The Attorney General has discretion to grant asylum if the alien meets the INA's definition of a "refugee."  8 U.S.C. § 1158(b)(1).  A "refugee" is:

> [A]ny person who is outside any country of such person's nationality or, in the case of a person having no nationality, is outside any country in which such person last habitually resided, and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of that country because of persecution or a well-founded fear of persecution on account of race,

---

[2]  The REAL ID Act changed the credibility standard for applications made on or after May 11, 2005, permitting credibility to be determined based on the totality of the circumstances and all relevant factors, including the demeanor and candor of the applicant or witness and the consistency of her testimony and written and oral statements, regardless of whether they go to the heart of the claim.  8 U.S.C. § 1158(b)(1)(B)(iii) (as amended by the REAL ID Act § 101(a)(3)).

religion, nationality, membership in a particular social group, or political opinion.

Id. § 1101(a)(42)(A). The burden of proof is on the alien to establish that she is a refugee by offering "credible, direct, and specific evidence in the record." Forgue v. United States Att'y Gen., 401 F.3d 1282, 1287 (11th Cir. 2005).

To establish asylum eligibility, the alien must demonstrate: (1) past persecution on account of "race, religion, nationality, membership in a particular social group, or political opinion;" or (2) a "well-founded fear" that one of these statutorily listed factors will cause such future persecution. 8 C.F.R. §§ 208.13(a), (b); Al Najjar, 257 F.3d at 1287. "Demonstrating such a connection requires the alien to present specific, detailed facts showing a good reason to fear that he or she will be singled out for persecution on account of" a statutory factor. Al Najjar, 257 F.3d at 1287 (citations omitted).

An applicant who establishes past persecution is presumed to have a well-founded fear of future persecution. 8 C.F.R. § 208.13(b)(1). If an applicant seeks asylum based on a well-founded fear of persecution, she must establish a causal connection between the statutory factor and the feared persecution and must present specific, detailed facts showing a good reason to fear that she will be singled out for persecution on account of the factor. Sepulveda v. United States Att'y Gen., 401 F.3d 1226, 1231 (11th Cir. 2005). An applicant may establish a

5

"well-founded fear" by demonstrating that her fear of future persecution is "subjectively genuine and objectively reasonable." Al Najjar, 257 F.3d at 1289; see also 8 C.F.R. § 208.13(b)(2).

The Act specifically defines forced abortion, involuntary sterilization, and coercive population control measures as political persecution. 8 U.S.C. § 1101(a)(42)(B). Specifically, it states:

> For purposes of determinations under this chapter, a person who has been forced to abort a pregnancy or to undergo involuntary sterilization, or who has been persecuted for failure or refusal to undergo such a procedure or for other resistance to a coercive population control program, shall be deemed to have been persecuted on account of political opinion, and a person who has a well founded fear that he or she will be forced to undergo such a procedure or subject to persecution for such failure, refusal, or resistance shall be deemed to have a well founded fear of persecution on account of political opinion.

Id.

In Yang, we determined that the petitioner, a Chinese citizen, failed to establish past persecution based on undergoing a sterilization procedure or a well-founded fear of persecution based on a fear of becoming sterilized because she failed to show that any injection she received was a sterilization measure rather than simply a birth-control measure. Yang, 418 F.3d at 1202. Although under China's family planning policies Yang was forced to pay a fine after her second child was born, "a single fine is not akin to a sterilization procedure or forced

6

abortion." Id. at 1203. Nevertheless, we held that Yang's verbal and physical resistance to a forced injection and the insertion of two intrauterine devices against her will, as well as her removal of the intrauterine devices in violation of Chinese law, could be considered "other resistance to a coercive population control program" under 8 U.S.C. § 1101(a)(42)(B). Id. at 1205. Because the BIA had not decided whether Yang's conduct fit within the "otherwise resist" clause, we remanded to the BIA for such a determination. Id.

Conversely, in Huang v. United States Att'y Gen., 429 F.3d 1002 (11th Cir. 2005), the applicant, another Chinese citizen, had never been pregnant and accordingly had not been forced to undergo an abortion or involuntary sterilization, but she was forced to undergo an initial state-ordered gynecological exam, refused to undergo a second such exam, and was detained for twenty days because of this refusal. Id. at 1010. The BIA had affirmed the IJ's denial of her application for asylum and withholding of removal and we denied the petition, holding that she did not meet her burden of proof to show "other resistance to a coercive population control program" under 8 U.S.C. § 1101(a)(42)(B). Huang v. United States Att'y Gen., 429 F.3d 1002, 1010 (11th Cir. 2005).

Here, the IJ's adverse credibility determination with respect to Jiang's claim of persecution based on China's allegedly coercive family planning policies was supported by substantial evidence. See Forgue, 401 F.3d at 1287. The IJ and BIA

7

correctly noted the inconsistencies between Jiang's testimony, her application, and her husband's application regarding the number of children they had, the children's birthdays, and whether Jiang was forced to pay fines known as social compensation fees. The document Jiang alleges is a certificate documenting a forced abortion does not undermine the IJ's adverse credibility determination because the State Department's 2004 Country Profile of China, which was admitted into the record, states that many certificates are not authentic, and those that are authentic are issued after voluntary abortions to allow the woman to get time off work. See Reyes-Sanchez v. United States Att'ys Gen., 369 F.3d 1239, 1243 (11th Cir. 2004) (stating that "[t]he Board was entitled to rely heavily" on State Department reports). Finally, the IJ accurately noted the inconsistencies between Jiang's testimony and her application with respect to whether an ultrasound and urinalysis were performed before the alleged forced abortion.

Because of the adverse credibility determination against Jiang, her testimony cannot be used to find that she experienced past persecution or had a well-founded fear of future persecution. See Forgue, 401 F.3d at 1287. She also submitted evidence, however, which the IJ and BIA were required to independently consider. See id. They did so, specifically examining the exhibits in the record including Jiang's husband's application, the alleged abortion certificate, and the State Department's Country Profile. The additional evidence did not show that Jiang

8

had experienced past persecution based on China's allegedly coercive family planning policies or had a well-founded fear of future persecution under those policies and, accordingly, the IJ's and BIA's denials of Jiang's asylum claim based on China's allegedly coercive family planning policies were supported by substantial evidence. See Mendoza v. United States Att'y Gen., 327 F.3d at 1287. Because Jiang failed to establish an entitlement to asylum on her coercive family planning policies claim, she also failed to meet the higher threshold for withholding of removal relief. See Al Najjar, 257 F.3d at 1293.

**II.**

Jiang next contends that with respect to her claim of religious prosecution based on being an unregistered Catholic, the IJ's and BIA's denial of relief is not supported by substantial evidence. When asserting a religious persecution claim, an applicant must demonstrate that she was persecuted on account of religion, which includes imputed religious beliefs. Mezvrishvili v. United States Att'y Gen., 467 F.3d 1292, 1296 (11th Cir. 2006).

We have stated that "persecution is an extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation, and that mere harassment does not amount to persecution." Sepulveda, 401 F.3d at 1231 (internal quotation marks and alteration omitted). Persecution may be established based on the cumulative effect of several incidents. Ruiz v. Gonzales, 479 F.3d

9

762, 764, 766 (11th Cir. 2007) (involving a case where the alien was beaten twice, threatened, and kidnaped by the FARC for eighteen days).

Persecution has been found in a number of egregious instances. See, e.g., Delgado v. United States Att'y Gen., 487 F.3d 855, 861 (11th Cir. 2007) (involving an alien who was accosted at gunpoint and later severely beaten); Mejia v. United States Att'y Gen., 498 F.3d 1253, 1257–58 (11th Cir. 2007) (holding that attempted attacks on an alien over a period of eighteen months, culminating in a roadside assault at gunpoint and resulting in broken nose constituted persecution); De Santamaria v. United States Att'y Gen., 525 F.3d 999, 1008–10 (11th Cir. 2008) (holding that an alien who was yanked out of a car by her hair and threatened with death, in combination with other death threats, a kidnaping, and other threatening actions established past persecution); Sanchez Jimenez v. United States Att'y Gen., 492 F.3d 1223, 1233 (11th Cir. 2007) ("[A]ttempted murder is persecution."). Nevertheless, "[n]ot all exceptional treatment is persecution." Gonzalez v. Reno, 212 F.3d 1338, 1355 (11th Cir. 2000); see also Zheng v. United States Att'y Gen., 451 F.3d 1287, 1291 (11th Cir. 2006) (holding that limiting employment opportunities and watching and occasionally searching an individual's home is not persecution); Djonda v. United States Att'y Gen., 514 F.3d 1168, 1174 (11th Cir. 2008) (holding that a minor beating and threats do not constitute persecution). For example, even a detention lasting for five days, during which the

10

alien was not harmed, does not compel a finding of persecution. Zheng, 451 F.3d at 1289–91 (finding no persecution where alien was forced to watch anti-Falun Gong re-education videos, dragged outside to stand in the sun for two hours, and forced to pledge that he would not practice Falun Gong).

As we already explained, we conclude that the IJ's adverse credibility determination against Jiang was based on substantial evidence. The IJ did not limit its adverse credibility finding to her coercive family planning policies claim and, accordingly, the sole question is whether any other evidence establishes that she is entitled to asylum or withholding of removal based on religious persecution.

Jiang contends that the following evidence shows that she was persecuted on account of her religion: her husband's arrest for a short time, a one-day detention allegedly based on her Catholic faith, closure of a Catholic church, and an unsuccessful attempt to arrest her again. These isolated events do not rise to the level of persecution, see Zheng, 451 F.3d at 1289–91, so the IJ's decision was supported by substantial evidence. The IJ's finding that Jiang lacked a well-founded fear of persecution was also supported by substantial evidence because both of Jiang's parents were also unregistered Catholics and lived in China, and the State Department's Country Report indicates that China is not generally repressive towards unregistered Catholics. See Sepulveda, 401 F.3d at 1231; Reyes-Sanchez, 369 F.3d at 1243. As with her coercive family planning policies claim, because

Jiang has not established eligibility for asylum, she also has not met the higher threshold for withholding of removal relief.  See <u>Al Najjar</u>, 257 F.3d at 1293.

**PETITION DENIED.**