[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 06-12708

_____

BIA No. A97-201-911

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
October 16, 2007
THOMAS K. KAHN
CLERK

VYACHESLAV NIFTALIEV,
LYUDMILA NIFTALIEVA,
DMITRO NIFTALIEV,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(**October 16, 2007**)

**SUBSTITUTE OPINION**

Before BIRCH, FAY and CUDAHY,[*] Circuit Judges.

FAY, Circuit Judge:

_____

*Honorable Richard D. Cudahy, United States Circuit Judge for the Seventh Circuit, sitting by designation.

Upon *sua sponte* reconsideration of this appeal, we vacate our prior opinion, published at 487 F.3d 834 (11th Cir. 2007), and substitute the following opinion in its place.

Vyacheslav Niftaliev[1] ("petitioner"), a citizen of the Ukraine, appeals the Board of Immigration Appeals's ("BIA") decision affirming the Immigration Judge's ("IJ") order denying his petition for withholding of removal under 8 U.S.C. § 1231(b)(3). The IJ denied the petitioner's request for withholding of removal, finding that the petitioner did not suffer past persecution. The Board of Immigration Appeals upheld the IJ's findings in a short affirmance. For the reasons set out below, we reverse.

## BACKGROUND

The petitioner testified as follows. He was born in 1965 in Azerbaijan, which at that time was a part of the former Soviet Union. His father was Azerbaijani and his mother was Ukrainian. The petitioner recognized at a young age that there was a noticeable divide between the Azerbaijani and Ukranian people. His Azerbaijani teachers singled him out and humiliated him because he was half Ukranian.

At age 18, the petitioner moved to the Ukraine to complete two years of military service, as was required of young men in the Soviet Union at the time. The

---

1. We recognize that the petitioner's wife and first child are also parties to this appeal. However, the only issue on appeal is whether the petitioner suffered past persecution.

2

majority of the soldiers were Ukrainian. These soldiers routinely harassed the petitioner due to his Azerbaijani blood. The other soldiers would belittle the petitioner, calling him names such as "filthy Azer" and "dirty Caucasian." Some soldiers would also regularly physically assault him. Officers would often assign the petitioner and other minorities the "dirty work," such as cleaning bathrooms and digging ditches.

After completing two years of obligatory military service, the petitioner moved to Estonia, which was also part of the Soviet Union, and started going to school. Professors showed a distaste for people with Azerbaijani blood, as well as other non-Estonian ethnic groups, and would verbally harass him in front of classrooms full of students. The petitioner was eventually kicked out of school for protesting his treatment.

In 1987, after divorcing his first wife, the petitioner moved back to the Ukraine and remarried. In 1991, the couple had their first child in the Ukraine. Because his last name was of Azerbaijani descent, he had trouble finding work and enrolling in school. That same year, the Ukraine became a sovereign nation when it separated from the Soviet Union. After the separation, there was a nationalist trend that further isolated the petitioner and other minorities there. The petitioner testified that his limited knowledge of the Ukrainian language became a liability as Ukranian replaced

Russian, the previous official language. Also, to obtain employment, the petitioner had to provide documentation such as a passport. These documents showed that he was not of pure Ukrainian blood. As a result, the petitioner found it difficult to find and hold down a job.

Since the new Ukranian government continued to treat other ethnic groups as second-class citizens, the petitioner and three of his friends formed a group of minorities (petitioner, another Azerbaijani, a Jew, and a Georgian) that protested the government. This group organized rallies and spoke out against treating minorities differently. For example, the petitioner testified that the government levied more taxes against him simply because he was not a pure Ukrainian. The group also protested against the Ukrainian National Assembly, a nationalist organization that discriminated against non-Ukrainians. The petitioner, and his group of friends, distributed pamphlets advocating equal rights for minorities.

In 1995, the petitioner's group urged a boycott of the upcoming elections because the candidates did not offer any solution to minorities' problems. At a rally against the candidates Ukrainian police beat up and arrested the petitioner. After the petitioner's first arrest, the SBU, a "higher police organization," would randomly interrogate him, search his home, and physically assault him.

The petitioner was arrested at least two more times for similar activities. On the last occasion, he was held for fifteen days without appearing before a court or tribunal. His captors claimed that they were concerned the petitioner was plotting an armed revolution. During these fifteen days, the petitioner was subjected to numerous interrogations, given very little food, and beaten several times. During an interrogation session on the fifteenth day, one of the officers put a pistol to the petitioner's head and threatened to kill him. It was only when the petitioner promised to leave the country that he was released.

Two months passed as the petitioner recuperated in the hospital and obtained the proper visas to leave the country. In early 1996, when the visas were in order, the petitioner, his wife, and his child, fled from the Ukraine to Argentina. Unfortunately, the mistreatment did not stop. While in Argentina, persons appearing to be muggers attacked the petitioner on two separate occasions. The muggers beat up the petitioner but did not steal anything. Not long after the muggings, an anonymous man speaking Russian called the petitioner in Argentina and indirectly referenced the attacks saying that his "friends in the Ukraine were giving regards to [him]." The petitioner agreed to meet this man in a small cafeteria. When they met, the man identified himself as a Ukrainian government official. This man asked the petitioner to provide him information on new chemistry technologies being developed at the chemical plant

where the petitioner worked. He further told the petitioner that the SBU still remembered him and to not forget that his mother was still in the Ukraine. The petitioner falsely agreed to obtain the information in order to stall for time. Shortly thereafter, the petitioner moved his family to a different address and obtained the necessary tourist visas to enter the United States. The petitioner and his family entered the United States on February 13, 2001 with a six-month tourist visa. They remained in the United States after the visa expired and gave birth to another child during that time.

## COURSE OF PROCEEDINGS

The Immigration and Naturalization Service (now part of the Department of Homeland Security) issued a Notice to Appear before the IJ on July 17, 2003. At that hearing the petitioner conceded that he, his wife, and his first child were subject to removal under 8 U.S.C. § 1227(a)(1)(B), but asked that he be considered for withholding of removal under 8 U.S.C. § 1231(b)(3).[2]

The hearing was continued until January 14, 2005. At that time, the petitioner presented general evidence in the form of experts' reports on nationalism, human

---

2. The petitioner also asked the IJ to consider withholding removal under the Convention Against Torture. See 8 C.F.R. § 208.16(c). As this appeal only deals with the petitioner's arguments pertaining to withholding of removal under 8 U.S.C. § 1231(b)(3), we do not address the validity of this claim.

rights, antisemitism, and political censorship in the Ukraine. The petitioner testified to the facts set forth above.

In considering a petitioner's claim for withholding of removal, the IJ must determine credibility in the same manner as in asylum cases. See 8 U.S.C. § 1231(b)(3)(C); 8 U.S.C. § 1158(b)(1)(B)(ii)-(iii). When discussing this petitioner's credibility, the IJ stated "[t]he cross examination of the [petitioner] did not reveal anything material or pertinent enough that would lead me to conclude that [he was] an incredible witness. I do believe he was consistent with his application." The IJ found, however, that his testimony was not sufficiently detailed and that there was no corroborative evidence to support the testimony. Therefore, the IJ held that the petitioner had not established that he had been subject to past persecution. In light of this finding, the IJ concluded that the petitioner failed to establish that it was more likely than not that he would be subject to future persecution, based upon a protected ground, if removed to the Ukraine. Thus, the IJ denied the petitioner's application for withholding of removal. On appeal, the BIA concluded there was no reversible error in the IJ's decision and summarily dismissed the petitioner's case. This appeal followed.

## STANDARD OF REVIEW

There is one issue on appeal before this Court:

7

I. Whether the BIA and IJ erred when they found the petitioner did not suffer past persecution.

"When the BIA issues a decision, we review the BIA's decision, except to the extent that the BIA has expressly adopted the IJ's decision." *Ruiz v. Gonzales*, 479 F.3d 762, 765 (11th Cir. 2007) (*citing Al Najjar v. Ashcroft*, 257 F.3d 1262, 1284 (11th Cir. 2001). "In that instance, we review the IJ's decision as well." *Id.*

If the BIA's decision is supported by reasonable, substantial, and probative evidence when the record is considered as a whole, this Court must affirm. *Ruiz*, 479 F.3d at 765. "To conclude that the BIA's decision should be reversed, we must find that the record not only supports the conclusion, but compels it." *Id.* (*citing Fahim v. U.S. Attorney Gen.*, 278 F.3d 1216, 1218 (11th Cir. 2002)).

## ANALYSIS

The petitioner argues that the IJ erred in concluding that he did not suffer past persecution. He argues that the systematic discrimination and abuse he suffered in the Ukraine based on his nationality, culminating with his fifteen-day detention where he was beaten, starved and threatened for his life, amounts to past persecution. Therefore, the petitioner asks that we remand the BIA's decision to the IJ so that he will have the benefit of the rebuttable presumption that his life or freedom would be threatened upon removal to the Ukraine. *See Antipova v. U.S. Attorney Gen.*, 392

8

F.3d 1259, 1264 (11th Cir. 2004) (*citing* 8 C.F.R. § 208.16(b)(1)(i)). 8 U.S.C. § 1231(b)(3)(A) enumerates that an immigrant cannot be removed to a country where his life or freedom would be threatened on account of the petitioner's race, religion, nationality, membership in a particular social group, or political opinion. *See also I.N.S. v. Elias-Zacarias*, 502 U.S. 478, 482 (1992). The United States ("respondent") does not challenge that the abuse suffered by the petitioner was based upon a protected ground, specifically nationality and/or political opinion.

The respondent does dispute the petitioner's claim that the IJ erred when he found that there had been no past persecution in this case. The respondent agrees with the IJ that even though the petitioner testified credibly, the lack of corroborative evidence was particularly damning, and justified a finding of no past persecution.

The petitioner raises an issue that this Court recently discussed in *Ruiz v. Gonzalez*, 479 F.3d 762 (11th Cir. 2007). In *Ruiz*, the petitioner was a Colombian immigrant seeking withholding of removal due to persecution by the Revolutionary Armed Forces of Colombia ("FARC"). *Id.* at 763. Ruiz had been very active in an opposing political party. *Id.* There were several incidents with the FARC, including ones where Ruiz was beaten, received threatening phone calls, had his bus pulled over and burned by the FARC, and finally when he and a friend were kidnaped and held against their will. *Id.* at 763-64. Ruiz was beaten and taunted for eighteen days,

9

until he was able to escape while the FARC skirmished with the Colombian army. *Id.* at 764. This Court held that the cumulative effect of the beatings, the threatening phone calls, the rape of his friend's wife, the kidnaping and resulting beatings and the killing of his friend amounted to past persecution. *Id.* at 766.

The respondent attempts to distinguish this case from *Ruiz*. The argument is that Ruiz had various pieces of corroborative evidence, including a police report from one of the assaults involving the FARC, a statement from the wife of his friend who was kidnaped with him and ultimately killed, and a medical report documenting treatment for scratches and wounds received while held captive in the jungle. *Id.* In this case, the only evidence dealing with his personal treatment is the petitioner's testimony. He does not present any police reports, hospital records, or other evidence to corroborate his testimony. The respondent argues that therefore 8 U.S.C § 1252(b)(4) prevents this Court from reversing the IJ's determination.[3] The respondent further argues that the petitioner's testimony is too vague to warrant a finding of past persecution.

These arguments simply have no merit. First, while the IJ did not explicitly state that the petitioner was credible, he did state that the petitioner was not

_____

3. "No court shall reverse a determination made by a trier of fact with respect to the availability of corroborating evidence... unless the court finds... that a reasonable trier of fact is compelled to conclude that such corroborating evidence is unavailable." 8 U.S.C. § 1252(b)(4).

incredible, and that his testimony was consistent with his application. As even the respondent recognizes on appeal, this language is equivalent to finding the petitioner credible and consequently his testimony must be accepted. In spite of the ruling on credibility, the IJ found, and the respondent now argues, that the petitioner's testimony is not sufficiently *detailed* to warrant relief.

However, the petitioner testified extensively and with sufficient detail about protests, beatings, arrests, searches, interrogations, being imprisoned for fifteen days, being held with little food or water, being threatened with being shot and even continued harassment when he moved to Argentina. The respondent had the opportunity to cross-examine the petitioner and did not expose any inconsistencies in his testimony, nor did the respondent seek more detailed explanations of events referred to in the testimony, but rather focused on the lack of corroborating evidence. Accepting the facts as outlined in detail by the petitioner, it is clear to us that he has suffered past persecution. See Yang v. U.S. Att'y Gen., 418 F.3d 1198, 1202 (11th Cir. 2005) (noting the applicant "must, with specific *and* credible evidence, establish past persecution") (emphasis added); In re S-M-J, 21 I.&N. Dec. 722 (BIA 1997) (stating an alien's own testimony "can suffice where the testimony is believable, consistent, *and* sufficiently detailed.").

11

With respect to the respondent's 8 U.S.C. § 1252(b)(4) argument, this appeal does not concern whether corroborative evidence was available. This appeal concerns whether or not the petitioner's credible testimony, in and of itself, establishes his past persecution. 8 C.F.R. § 208.16(b) provides that "[t]he testimony of the applicant, if credible, may be sufficient to sustain the burden of proof [in a withholding of removal case] without corroboration." We are satisfied that such is the situation here.

The facts in this case are akin to *Ruiz* and in our opinion this record compels a finding of past persecution based upon the cumulative effect of (1) the discrimination the petitioner suffered in the Ukraine due to his mixed ethnicity, (2) the numerous beatings, arrests, searches, and interrogations he endured after speaking out against the Ukrainian government, (3) the fifteen-day period he spent in detention, deprived of food, beaten, and threatened at gunpoint, and (4) the beatings and threats he received from Ukrainian officials after he fled to Argentina. Therefore, we find that the petitioner should benefit from the rebuttable presumption that his life or freedom would be threatened if returned to the Ukraine.

We hold that the IJ erred when he found that the petitioner failed to establish past persecution. The BIA made the same mistake. The facts of this case compel such a finding. We are also troubled by the notion of condemning the petitioner for

12

failing to obtain some sort of documentation from the same government that persecuted and imprisoned him, concerning incidents that occurred approximately ten years ago.

## CONCLUSION

Because this record compels a finding that the petitioner suffered from past persecution, he is entitled to the benefit of the rebuttable presumption described in 8 C.F.R. § 208.16(b)(1)(i). We grant the petition, reverse the rulings of the BIA and IJ and remand to the BIA to remand to the IJ for proceedings consistent with this opinion.