[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 08-13615
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 5, 2009
THOMAS K. KAHN
CLERK

Agency Nos. A96-096-763,
A96-096-764

MARIELA SOLAQUE-PRIETO,
RAUL ROJAS-CHARRY,
NATALY ROJAS-SOLAQUE,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(February 5, 2009)

Before WILSON, PRYOR and KRAVITCH, Circuit Judges.

PER CURIAM:

Petitioner Mariela Solaque-Prieto ("Petitioner"), with her husband and daughter, seeks review of the Board of Immigration Appeals' ("BIA") decision affirming the Immigration Judge's ("IJ") denial of Petitioner's application for asylum. After a thorough review, we conclude that the evidence does not compel the conclusion that Petitioner suffered past persecution or that she has a well-founded fear of future persecution. Accordingly, we affirm the BIA's denial of asylum and DENY the petition for review.

I.

Petitioner, a native and citizen of Columbia, entered the United States with a non-immigrant visa in 2001. After the expiration of her visa, Petitioner filed an application for asylum, withholding of removal, and CAT relief, claiming that she had been persecuted in Colombia for her political opinion. She included her husband and daughter as derivative beneficiaries on her application.

Based upon Petitioner's application, the documentary evidence and the testimony before the IJ, the BIA made its decision on the following facts:[1]

Petitioner, who worked as a stylist in Ciudad Bolivar, Bogota, was well known for

---

[1] The IJ found that Petitioner and her husband were not credible due to numerous inconsistencies within their testimony and between her application, documentary evidence, and testimony. Petitioner appealed this credibility determination to the BIA, arguing that the inconsistencies cited by the IJ were trivial. The BIA, however, found it "unnecessary to address credibility" because "even if deemed credible," Petitioner did not sustain her burden of proof regarding asylum or withholding of removal. Accordingly, because we only review the decision of the BIA - not the IJ - we must accept the testimony as credible and do not consider the IJ's credibility findings. De Santamaria v. U.S. Att'y Gen., 525 F.3d 999, 1006 (11th Cir. 2008).

2

her volunteer work with a community action board. The goal of the board was to encourage area businesses and engage area youths in sports and cultural activities that would keep them drug and crime-free. Petitioner first became a volunteer for the board, which was affiliated with the Colombian Liberal Party, in January of 1999. She and her husband were two of twenty or so members and had no special leadership role in the organization. Petitioner testified that the urban guerillas of the FARC disapproved of the community action board because it harmed the FARC's efforts to recruit local youths.

Petitioner and her husband first encountered the FARC at a soccer game in August of 1999, when two individuals approached them, identified themselves as FARC members, showed them small weapons, and warned them to stop their activities and that they were being watched. After that incident, Petitioner and her husband stopped the work they were doing with the community action board. Thereafter, they received two threatening phone calls at their house; the first in September 1999 and the second in October 1999. Both calls were made by persons identifying themselves as members of the FARC and warned Petitioner and her husband to stop their work with the community's youth. Petitioner heard that two other volunteers of the community action board had also received threats from the FARC.

In December 1999, two letters of condolence – one with Petitioner's name

3

on it – were left on Petitioner's door. Petitioner understood these letters to be death threats from the FARC. Subsequently, she and her family moved away from Bogota and stayed with friends. While she was away, Petitioner's parents received messages threatening her and warning her not to return. Upon returning home in February 2000, Petitioner found a letter from the FARC under her door which declared that she was a military target. Neither Petitioner nor her husband reported any of these threats to the police. In April 2000, Petitioner and her family moved away from Ciudad Bolivar permanently, staying for the first three months in Patio Bonito, about an hour away.

In October 2000, over one year after he had ended his involvement with the community action board, Petitioner's husband was hit by a car as he walked down a street in a neighborhood near Patio Bonito. The men in the car identified themselves as FARC members and called out, "now you know what can happen to you." Petitioner's husband was seriously injured and required extensive medical care, including a metal plate in his face. After this incident, Petitioner and her husband applied for and obtained visas to come to the United States. Neither Petitioner nor her husband reported the vehicular assault to the police, before or after leaving for the United States.

Petitioner first traveled to the United States in February 2001; her husband followed in May 2001. She returned to Colombia in August 2001 and remained in

hiding for two months before returning to the United States with her daughter on October 17, 2001. Since she has been in the United States, Petitioner has heard from her parents that it was rumored that one member of the community action board was murdered.

The United States Department of State's Colombia Country Report of Human Rights Practices for 2005 ("2005 Country Report"), which was available at the time of Petitioner's hearing, states that the FARC have been known to kill and kidnap journalists, religious leaders, political candidates, elected officials and politicians, alleged paramilitary collaborators, and members of the security forces.

After considering the evidence provided by Petitioner, the IJ found that Petitioner failed to establish either past persecution or a well-founded fear of future persecution based on a protected ground. The IJ explained that the community action board's goals – to improve business environment and encourage young adults to remain drug and crime-free – did not constitute a "political opinion;" as such, any persecution for participation in this group could not be persecution "on account of a protected ground" as required for asylum. Furthermore, even if Petitioner was targeted on the basis of her political opinion, the IJ found that she established no past persecution. The IJ found that she was merely the victim of unfulfilled threats and that she had not adequately established a connection between the attack on her husband and any political opinion of Petitioner. The IJ

also noted that Petitioner's fear of future persecution based on a "rumor that an individual in her group was killed" did not support even "a ten percent chance that she would be persecuted for her political opinion." Finally, the IJ found that Petitioner was alleging persecution by the FARC, a non-governmental entity, and that she did not establish that the government was unable or unwilling to protect her from this alleged threat because she never reported any instances of persecution to the police. Accordingly, the IJ denied Petitioner's applications for asylum, withholding of removal, and relief under CAT.

On appeal, the BIA affirmed the IJ's decision. It found that the threats and condolence letters did not rise to the level of persecution and that the evidence did not support Petitioner's claim that members of the FARC hit her husband on account of her political opinions. For these reasons, the BIA found Petitioner had not established past persecution in Colombia. The BIA further found that the record, which included the 2005 Country Report for Colombia, did not support Petitioner's claim that she was likely to suffer persecution in the future on account of a protected ground or that she was more likely than not to face torture in Colombia.

Petitioner now appeals to this court, arguing that the evidence compels a finding of past persecution and a well-founded fear of future persecution based on her political opinion and that, therefore, the BIA erred in denying her application

6

for asylum.[2] She asserts that, because the community action board was affiliated with the Colombian Liberal Party which opposes the FARC, the evidence compels a finding of a nexus between the FARC's attack on her husband and her actual or imputed political opinion. Furthermore, she claims that her past persecution as well as the 2005 Country Report compels a finding of well-founded fear of future persecution.

## II.

This court reviews only the decision of the BIA, except to the extent it expressly adopts the IJ's opinion. De Santamaria, 525 F.3d at 1006. We review the BIA's factual determinations under the substantial evidence test and will "affirm the [BIA's] decision if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." Id. "To conclude that the BIA's decision should be reversed, we must find that the record not only supports the conclusion, but compels it." Niftaliev v. U.S. Att'y Gen., 504 F.3d 1211, 1215 (11th Cir. 2007). The fact that evidence in the record may also support a conclusion contrary to the administrative finding is not enough to justify reversal. Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004).

---

[2] On appeal, Petitioner does not challenge the BIA's denial of her petition for withholding of removal or relief under CAT; therefore, she has abandoned these claims. See Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1228 n.2 (11th Cir. 2005).

7

III.

An alien in the United States may be granted asylum if the alien meets the statutory definition of "refugee." See 8 U.S.C. § 1158(b)(1)(A). The alien has the burden of proving the "refugee" status that entitles him or her to be considered for asylum. Mejia v. U.S. Att'y Gen., 498 F.3d 1253, 1256 (11th Cir. 2007); 8 C.F.R. § 208.13(a). To establish asylum eligibility based on political opinion, the alien carries the burden to prove, with credible evidence, either that (1) she suffered past persecution on account of her political opinion, or (2) she has a "well-founded fear" that her political opinion will cause her to be persecuted. Sepulveda, 401 F.3d at 1230-31 (citation omitted). "The asylum applicant must establish eligibility for asylum by offering 'credible, direct, and specific evidence in the record.'" Forgue v. U.S. Att'y Gen., 401 F.3d 1282, 1287 (11th Cir. 2005). Furthermore, "[t]o warrant reversal of the BIA's finding that an alien has failed to demonstrate a sufficient nexus between [her] political opinion and [her] alleged persecution, we must be compelled to find that the alien will be persecuted *because of* [her] political opinion." Rodriguez Morales v. U.S. Att'y. Gen., 488 F.3d 884, 890-91 (11th Cir. 2007) (emphasis in original). The fact that the alleged persecutor's actions are motivated by the persecutor's political belief is "irrelevant" to the question of whether the alien was persecuted on account of the alien's political belief. Id. at 891.

8

Establishing a history of past persecution creates a rebuttable presumption that the alien has a fear of future persecution. Forgue, 401 F.3d at 1286. Without the benefit of this presumption, however, a petitioner may still prove her eligibility for asylum by showing (1) a subjectively genuine and objectively reasonable fear of future persecution that is (2) on account of her political opinion. De Santamaria, 525 F.3d at 1007. Although the INA and regulations do not define "persecution," this court has indicated that "persecution is an extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation, and that mere harassment does not amount to persecution." Sepulveda, 401 F.3d at 1231; see also Gonzalez v. Reno, 212 F.3d 1338, 1355 (11th Cir. 2000).

In this case, Petitioner does not present evidence which compels a finding that she suffered past persecution. She complains of a handful of threats related to her volunteer work, none of which resulted in violence against her. Clearly, these threats alone do not rise to the level of past persecution. See Sepulveda, 401 F.3d at 1231. Furthermore, there is no evidence in the record which compels us to find a connection between the attack on her husband and her volunteer activities. He was struck by a vehicle in a town one hour away from where the community action board was active and over one year after both he and his wife had ended their affiliation with the group. Although Petitioner assumes the crime was related to her community service because the passengers identified themselves as members

9

of FARC, we can not say that the evidence compels this assumption. See id. at 1229 (finding that evidence of threats against petitioner and the bombing of petitioner's workplace did not compel a finding of past persecution because threats do not rise to the level of persecution and the evidence did not compel the conclusion that the restaurant bombing was linked to the petitioner's political activity).

Furthermore, even if we were to find a connection between the attack on Petitioner's husband and her volunteer work, we agree with the IJ that Petitioner's affiliation with the community action board does not constitute protected "political opinion." Although she claims the community action board was "affiliated" with the Colombian Liberal Party, she presents no evidence that her work on the board furthered the Party's ideals; rather, by her own testimony, the goals of the board were to encourage business and to engage local youths in wholesome activities. At most, Petitioner's evidence shows that the FARC's guerillas disapproved of her work because it interfered with their recruitment efforts. We have held, however, that "[i]t is not enough to show that [the alien] was or will be persecuted or tortured due to [the alien's] refusal to cooperate with the guerrillas." Sanchez v. U.S. Att'y Gen., 392 F.3d 434, 438 (11th Cir. 2004) (citation omitted) (finding no nexus between the alien's political opinion and her alleged persecution, even though the FARC threatened the alien for refusal to cooperate with them because

she was "not in agreement with the way the FARC had destroyed the country");
see also Rodriguez Morales, 488 F.3d at 891 (holding that evidence that FARC persecuted petitioner for refusing to perform dental services for their members and help in spreading their political views did not compel finding that persecution was on account of political opinion). Accordingly, the fact that Petitioner's volunteer work happened to interfere with FARC's recruitment goals is insufficient to establish that her service communicated a political opinion.

Because she does not prove past persecution on the basis of a political opinion, Petitioner is not entitled to the presumption of a well-founded fear of future persecution. Without the benefit of this presumption, Petitioner has not presented evidence compelling an independent finding of an objectively reasonable fear of future persecution based on her political opinion. She presents no evidence that her alleged notoriety as a community action board volunteer would outlast her seven year absence from Colombia. Petitioner's involvement with the board, which lasted only about eight months and ended over eight years ago, was as one of twenty volunteers. She did not hold a leadership position in the organization. She is aware of only two other members who received threats from the FARC and, although she claims one member was murdered, her information is based on rumor and she presents no evidence linking the alleged murder victim to her involvement in the organization. Furthermore, contrary to Petitioner's assertions, the 2005

11

Country Report does not compel us to find that Petitioner reasonably fears persecution. Although the 2005 Country Report notes that the FARC killed and kidnaped people from many groups in Colombia, including journalists, religious leaders, politicians, paramilitary collaborators, and members of the security forces, Petitioner is not a member of any of these targeted groups. Thus, we conclude the BIA's finding that Petitioner did not have a well-founded fear of future persecution is supported by substantial evidence.

Because the evidence does not compel the conclusion that Petitioner suffered past persecution or has a well-founded fear of future persecution based upon her political opinion, we need not consider possible alternative grounds for denying her asylum claim. Also, because the BIA's opinion was based upon the assumption that Petitioner and her husband's testimony was credible, the IJ's adverse credibility findings are not relevant to our review; therefore we need not consider Petitioner's arguments regarding the IJ's credibility findings. Accordingly, we conclude that the BIA's denial of Petitioner's application for asylum was proper and we deny the petition for review.

**DENIED.**