[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 08-16259
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 30, 2009
THOMAS K. KAHN
CLERK

Agency Nos. A079-483-795,
A079-483-796

VIKTOR SERGEYEVICH ORDA,
SVETLANA VALERIEVNA ORDA,
OKSANA VIKTOROVNA ORDA,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(June 30, 2009)

Before DUBINA, Chief Judge, TJOFLAT and KRAVITCH, Circuit Judges.

PER CURIAM:

Viktor Sergeyevich Orda, with his daughter and wife as derivative

beneficiaries, petitions this court for review of the Board of Immigration Appeals'

(the "BIA") affirmance of the Immigration Judge's (the "IJ") order of removal and

denial of asylum and withholding of removal. For the reasons discussed below, we

deny Orda's petition for review.

## I.

In 2001, Orda, accompanied by his wife Svetlana and daughter Oksana,

arrived in the United States on an immigrant visa. In 2005, the INS issued notices

to appear, alleging that Orda was a native of the Soviet Union and a citizen of the

Ukraine, that Svetlana was a native of the Soviet Union and citizen of Lithuania,

that Oksana was a native and citizen of Lithuania, and that all three had remained

beyond the expiration period of their visas and were therefore removable under

INA § 237(a)(1)(B). Orda timely applied for asylum and withholding of removal,

claiming that he was entitled to relief because his wife and daughter had suffered

persecution in the Ukraine based on their status as Russian-speaking Lithuanian

citizens.[1] Svetlana and Oksana did not file their own applications for relief, but

---

[1]Orda also claimed that he had a well-founded fear of future persecution in Lithuania because he had formerly been persecuted in Lithuania on account of his ethnicity and nationality. The IJ found, however, that because Orda admitted that he was a citizen of Ukraine, Ukraine was the country of removal and the only pertinent inquiry was whether Orda had a reasonable fear of future persecution in the event of his removal to Ukraine. Orda's allegations of persecution in Lithuania, therefore, were irrelevant to his well-founded fear analysis. The BIA adopted this portion of the IJ's decision and Orda does not raise this issue in his petition to this court. The issue, therefore, has been abandoned. See Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1228 (11th Cir. 2005).

proceeded as derivative beneficiaries of Orda's application.

At the merits hearing before the IJ, Orda admitted the allegations of the notices to appear and conceded removability. Orda and Svetlana then testified and their testimony, in relevant part, was as follows: Orda was born in Ukraine and had been a soldier in the Soviet Army prior to the dissolution of the Soviet Union. While he was a soldier, he was stationed in Ukraine for a time and then in Lithuania. Orda and Svetlana lived in Lithuania from 1989 through 2001; their daughter Oksana was born there in 1990. After the former Soviet states declared independence in 1991, there was a movement of nationalism among these states and Lithuanians began to discriminate against and persecute native Russians and Ukranians. Orda was discriminated against and beaten in Lithuania because he was a Russian-speaking Ukranian national and had been an officer with the Soviet army. Svetlana was also discriminated against because she was Russian-speaking. Seeking a better life, the family relocated to Ukraine from December 1993 through January 1994. When they arrived in Ukraine, however, hotel employees refused to allow Svetlana and Oksana to stay in the hotel because they were Lithuanian and the family was forced to sleep in their car in the cold. Ukranian authorities informed Svetlana and Oksana that they could never obtain citizenship in Ukraine and should just go back to Lithuania. Thereafter, Orda contacted his former classmate Nikolay Gordyak, who was then the chief detective of the Ministry of

3

Internal Affairs, for assistance in getting a Ukranian passport for his wife and daughter. Under the pretense of helping with the paperwork, Gordyak invited Svetlana to his office, where he raped her and told her that she would be killed if she told anybody. After this incident, the family returned to Lithuania, where they remained until coming to the United States in 2001. Orda himself experienced no trouble from the Ukranian government during the trip and his parents continue to live in Ukraine without incident. If he and his family were to return to Ukraine, however, Orda fears Gordyak would harm him because Gordyak "hates [Orda] personally because [he] got married to" Svetlana, who was Gordyak's "first love."

In addition to this testimony, Orda submitted the 2006 Country Reports for both Lithuania and Ukraine. Both reports acknowledge that violence against women and police corruption are problems in these countries. The Ukranian report, however, indicated that the law prohibited rape and a number of rapes had been reported to police.

Based upon this evidence, the IJ found Orda to be credible, but concluded that Orda did not suffer past persecution in Ukraine himself and had not shown that he had a well-founded fear of persecution in the event of his removal to Ukraine. With respect to Svetlana's rape, the IJ found that this crime had been motivated by Gordyak's personal feelings and did not constitute persecution on account of a protected ground. Accordingly, the IJ denied the requested relief.

4

Orda appealed to the BIA, which affirmed the IJ's determination that Orda, as the lead respondent, had failed to meet his burden of proof for asylum. The BIA found that Orda was never personally harmed in Ukraine and that nothing in the evidence indicated that the rape of Orda's wife was motivated by a protected ground. The BIA also explained that, because every applicant for personal asylum must establish his or her individual eligibility for relief, a grant of asylum to the principal applicant can not be based upon harm to one of the application's derivative beneficiaries. Accordingly, the BIA found that Orda's asylum claim could not be granted based upon his wife and daughter's fear of persecution in Ukraine. For these reasons, the BIA dismissed Orda's appeal.

## II.

We review only the decision of the BIA, except to the extent it expressly adopts the IJ's opinion. De Santamaria v. U.S. Att'y Gen., 525 F.3d 999, 1006 (11th Cir. 2008). We review the BIA's factual determinations under the substantial evidence test and will "affirm the [BIA's] decision if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." Id. "To conclude that the BIA's decision should be reversed, we must find that the record not only supports the conclusion, but compels it." Niftaliev v. U.S. Att'y Gen., 504 F.3d 1211, 1215 (11th Cir. 2007).

## III.

To be eligible for asylum, an alien must establish status as a "refugee." Sepulveda, 401 F.3d at 1230. The statute defines "refugee" as:

> [A]ny person who is outside any country of such person's nationality . . . and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.

8 U.S.C. § 1101(a)(42)(A). An alien may demonstrate status as a refugee primarily either by establishing well-founded fear of persecution or establishing past persecution, which gives rise to a rebuttable presumption of a well-founded fear. See Sepulveda, 401 F.3d at 1230-31. Past persecution exists when the alien establishes he has suffered persecution in the past in the relevant country on account of one of the protected grounds, and is unable or unwilling to return to, or avail himself of the protection of, the country in question. 8 C.F.R. § 208.13(b)(1). The government may then attempt to rebut the presumed well-founded fear that arises from the finding of past persecution by demonstrating either a fundamental change in circumstances in the country or that the applicant could avoid future persecution by relocating to a different area of the country. Id. § 208.13(b)(1)(I).

In his petition for review, Orda argues, inter alia, that substantial evidence does not support the BIA's factual determination that Svetlana's rape was not inflicted on account of a protected ground. He notes that an applicant for asylum

6

"need not conclusively show why persecution occurred," <u>Matter of S-P</u>, 21 I.&N. Dec. 486 (BIA 1996), and must only "produce evidence from which it is reasonable to believe that the harm was motivated, at least in part, by an actual or imputed ground." <u>INS v. Elias-Zacarias</u>, 502 U.S. 478 (1992). Orda points out that the record contains the State Department Report on Ukraine, which notes that police corruption, violence against women, and harassment of ethnic minorities are serious problems in Ukraine. Given this evidence of the country conditions, Orda claims that the record compels a finding that Svetlana's mixed ethnicity and non-Ukranian citizenship rendered her particularly vulnerable to abuse by the police and others. Although he admits that Gordyak had a personal history with Svetlana, Orda asserts that Gordyak would not have raped her but for her status as a vulnerable Russian-speaking migrant of mixed ethnicity. Accordingly, Orda asserts that the BIA erred in finding as a matter of fact that Svetlana's rape was not on account of a protected ground.

We must affirm the BIA's factual determinations if they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole." <u>De Santamaria</u>, 525 F.3d at 1006. If substantial evidence supports the BIA's findings that an alien suffered particular harms for reasons other than his or her race, religion, nationality, membership in a particular social group, or political opinion, the petition for review will be denied. <u>See, e.g.</u>, <u>Scheerer v. U.S. Att'y</u>

7

Gen., 445 F.3d 1311, 1316 (11th Cir. 2006) (substantial evidence supported IJ's conclusion that applicant's prosecution in his home country was not due to his political opinion). In this case, Orda's own testimony indicates that Gordyak had previously been in love with his wife and that he was angry because she had married Orda instead of him. This testimony provides substantial support for the IJ and BIA's finding that Gordyak's criminal conduct was motivated by his personal desire to humiliate his former love-interest and to punish Orda, his rival and former classmate. We therefore affirm the IJ and BIA's factual determination that Orda's wife was raped for reasons other than her ethnicity or nationality. For this reason, we conclude that Orda has not established that he – or any member of his family – suffered persecution in the past in the relevant country on account of one of the protected grounds.[2]

Without past persecution, Orda is not presumed to have a well-founded fear of persecution and the record does not show that Orda has an objective basis to fear future harm in the Ukraine. Accordingly, the BIA's denial of Orda's application for asylum and withholding of removal was proper and we deny the petition for review.

---

[2]Orda also argues that the BIA erred in holding that his asylum claim may not be based upon his wife's persecution in Ukraine. Because we conclude that the record supports the BIA's finding that his wife was not persecuted on account of a protected ground in Ukraine, this argument is moot and we do not consider it.