[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 10-11784
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DECEMBER 14, 2010
JOHN LEY
CLERK

Agency No. A095-534-204


FERNANDO ALBERTO MORENO BORJA,

                                                            Petitioner,

                                    versus

U.S. ATTORNEY GENERAL,

                                                            Respondent.


_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(December 14, 2010)

Before DUBINA, Chief Judge, HULL and ANDERSON, Circuit Judges.

PER CURIAM:

    Petitioner Fernando Alberto Moreno Borja ("Moreno"), a native and citizen

of Colombia, petitions for review of the final order of the Board of Immigration Appeals ("BIA") affirming the Immigration Judge's ("IJ") denial of asylum, withholding of removal, and relief under the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment ("CAT"), 8 U.S.C. §§ 1158, 1231(b)(3)(A); 8 C.F.R. § 208.16(c). Moreno argues that the BIA erred in denying his claim for asylum.[1]

Moreno testified that, while living in Colombia, he worked as a medical doctor and surgeon and participated in activities sponsored by the Colombian Conservative Party. He testified that the Revolutionary Armed Forces of Colombia ("FARC") kidnaped him for five hours, forced him to treat one of their wounded, and made threats against him and his family when he refused to assist them any further.

First, Moreno argues that the BIA erred in finding that the kidnaping and death threats he endured at the hands of the FARC did not constitute past persecution, and he contends that he has a well-founded fear of future persecution due to the harassment he suffered and the continuing guerilla problem in

---

[1] In his brief to this Court, Moreno does not challenge the BIA's denial of CAT relief and only fleetingly mentions his claim for withholding of removal. Therefore, he has abandoned those claims. *See Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1228 n.2 (11th Cir. 2005) ("When an appellant fails to offer argument on an issue, that issue is abandoned.").

Colombia. Second, Moreno argues that the FARC persecuted him on account of imputed political opinion and membership in a particular social group. Regarding political opinion, Moreno contends that, because he refused to provide medical services to the FARC while providing such services to the Conservative Party, the FARC viewed him not just as a doctor but as a political opponent, and they harassed him, at least in part, due to this political opposition. As to membership in a particular social group, Moreno argues that, because he is a "doctor who has participated in the Conservative Party's health brigades that promote party loyalty and control of electoral seats," he belongs to a recognizable and discreet social group.

We review only the BIA's decision as the final judgment, but where the BIA agrees with the IJ about an issue, we review the decisions of both the IJ and the BIA regarding that issue. *Kazemzadeh v. U.S. Att'y Gen.*, 577 F.3d 1341, 1350 (11th Cir. 2009). Here, the BIA agreed with the IJ's finding that Moreno failed to establish past or future persecution on account of a protected ground. Therefore, we review both the BIA's and the IJ's findings with respect to these issues. *See id.*

We review the IJ's and the BIA's factual determinations under the highly deferential substantial-evidence test and will affirm if the decision "is supported by reasonable, substantial, and probative evidence on the record considered as a

3

whole." *Id.* at 1351 (internal quotation marks omitted). Under the substantial-evidence test, we may reverse a finding of fact "only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." *Adefemi v. Ashcroft*, 386 F.3d 1022, 1027 (11th Cir. 2004). We review the IJ's and the BIA's legal conclusions *de novo. Kazemzadeh*, 577 F.3d at 1350.

An alien may receive asylum in the United States if he is a "refugee" within the meaning of the INA. *Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1230 (11th Cir. 2005). The INA defines a refugee as a person who cannot return to his home country due to "persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." INA § 101(a)(42), 8 U.S.C. § 1101(a)(42). Thus, to be eligible for asylum, an alien must establish, with credible evidence, either past persecution or a well-founded fear of future persecution, both on account of a protected ground. *Sepulveda*, 401 F.3d at 1230-31.

We define persecution as an "extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation." *Id.* at 1231 (internal quotation marks omitted). To illustrate, we have held that menacing phone calls and threats to an alien, coupled with a bombing at the restaurant where she

4

worked, did not compel a finding of persecution. *Id.* Similarly, we rejected a claim of persecution where Togo police detained petitioner at a police station for 36 hours, kicked and beat him with a belt, which caused multiple scratches and bruises, and threatened him. *Djonda v. U.S. Att'y Gen.*, 514 F.3d 1168, 1171, 1175 (11th Cir. 2008); *see also Kazemzadeh*, 577 F.3d at 1353 (concluding that no persecution existed where the Iranian authorities arrested petitioner for participating in a student demonstration, interrogated and beat him for five hours, detained him for four days, and monitored him after his release); *Zheng v. U.S. Att'y Gen.*, 451 F.3d 1287, 1289-91 (11th Cir. 2006) (concluding that an alien did not suffer persecution where authorities detained him for five days, forced him to watch re-education materials, made him stand in the sun for two hours, and, after his release, monitored him and occasionally searched his residence).

On the other hand, we upheld a persecution claim where FARC made numerous death threats to petitioner, dragged her by the hair out of her car and beat her, tortured and killed her groundskeeper, and kidnaped and beat her before government forces rescued her. *De Santamaria v. U.S. Att'y Gen.*, 525 F.3d 999, 1008-09 (11th Cir. 2008). Similarly, we agreed that an alien suffered persecution where he received numerous death threats over an 18-month period and was twice physically attacked, including having his nose broken with the butt of a rifle.

*Mejia v. U.S. Att'y Gen.*, 498 F.3d 1253, 1257-58 (11th Cir. 2007); *see also*

*Niftaliev v. U.S. Att'y Gen.*, 504 F.3d 1211, 1217 (11th Cir. 2007) (accepting a

persecution claim where petitioner suffered "numerous beatings, arrests, searches,

and interrogations" and spent 15 days in detention where he was "deprived of

food, beaten, and threatened at gunpoint").

If an alien fails to show past persecution, he may still qualify for asylum

based on a "well-founded fear" of future persecution. *Kazemzadeh*, 577 F.3d at

1352. However, an alien's fear of persecution must be "subjectively genuine and

objectively reasonable." *Id.* (internal quotation marks omitted). The "subjective

component . . . is generally satisfied by the applicant's credible testimony that he

or she genuinely fears persecution." *De Santamaria*, 525 F.3d at 1011 (internal

quotation marks omitted). In evaluating objective reasonableness, we consider

"the totality of the circumstances surrounding any voluntary return—including the

reasons for the asylum applicant's return, whether the return was without incident,

and whether the applicant's family members continue to live in the home country

without incident." *Id.* at 1011-12.

Regarding protected grounds, to demonstrate a sufficient nexus between

political opinion and alleged persecution, an alien must show that he will be

persecuted "because of" his actual or imputed political opinion. *Rodriguez*

6

*Morales v. U.S. Att'y Gen.*, 488 F.3d 884, 890 (11th Cir. 2007).  The persecutors'

own political beliefs are irrelevant, and "it is not enough to show that the alien was

or will be persecuted or tortured due to the alien's refusal to cooperate with the

guerillas." *Id.* (internal quotation marks and alterations omitted).

In this case, we conclude from the record that the BIA did not err in

affirming the denial of Moreno's application for asylum.  The BIA properly

concluded the FARC's five-hour kidnaping of Moreno and the severe threats the

FARC made to Moreno did not rise to the level of persecution, and substantial

evidence supported the BIA's finding that Moreno did not have a well-founded

fear of future persecution.

Regarding protected grounds, evidence showed that the FARC targeted

Moreno only for his medical services, not because of his actual or imputed

political opinion.  Moreover, Moreno failed to exhaust his claim that doctors who

participate in the Conservative Party's health brigades constitute a particular social

group, and he abandoned his claim that doctors or surgeons, standing alone,

constitute a particular social group.  Thus, we lack jurisdiction to review these

arguments.  *See Adefemi*, 386 F.3d at 1031 n.13.  Therefore, we conclude that

Moreno failed to establish a nexus between his alleged persecution by the FARC

and a protected ground.

In sum, the record does not compel reversal of the BIA's decision that Moreno failed to establish past persecution or a well-founded fear of future persecution on account of a protected ground. Accordingly, we deny the petition for review in part and dismiss in part.

**PETITION DENIED IN PART, DISMISSED IN PART.**