[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 13-11799

_____

Agency No. A201-258-411

SOLCILET DEL MAR LUCENA VASQUEZ,
LEONARDO JOSE PENALOZA HEREDIA,
a.k.a. Leonardo Pendalosa Heretia,
MARIA JOSE PENALOZA LUCENA,
a.k.a. Maria Jose Pendalosa Lucena,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(May 20, 2014)

Before MARTIN and FAY, Circuit Judges, and DUFFY,[*] District Judge.

PER CURIAM:

Solcilet Del Mar Lucena Vasquez, a native and citizen of Venezuela, petitions for review of the Board of Immigration Appeal's ("BIA") order affirming the Immigration Judge's ("IJ") denial of Lucena Vasquez's application for asylum, withholding of removal, and relief under the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment ("CAT").  We grant the petition and reverse.

## I. BACKGROUND

A. Factual Background

Lucena Vasquez was born in Caracas, Venezuela, in September 1978.  In 2003, she became involved actively with the political party "Primero Justicia," or "Justice First," which supported democracy and opposed Venezuela's president, Hugo Chavez.  Lucena Vasquez served on a party committee, attended monthly meetings, worked to promote the party's candidates, and encouraged citizens to participate in the democratic process.  Her political beliefs were known to others; consequently, she became the target of a pro-Chavez group, the Bolivarian Circles.

Lucena Vasquez first was threatened in June 2007.  While in a university classroom, two men with guns came in and said to Lucena Vasquez: "Stop talking

---

[*] Honorable Patrick Michael Duffy, United States District Judge for the District of South Carolina, sitting by designation.

about our commander, you damned squalid.  Otherwise we're going to kill you and your puppets."[1]  ROA at 113.  Before leaving, the men indicated they would be watching Lucena Vasquez.  She reported this incident to the police.  At first, the police were helpful, but they became irritated upon learning she was a member of Justice First.  When Lucena Vasquez mentioned the Bolivarian Circles, the police told her she could not accuse them.  Rather than take her complaint, a police officer threatened to arrest her, because she did not know her attackers' names.

The threats continued in 2008, when her car was vandalized twice.  First, in July 2008, Lucena Vasquez found her bumper had been kicked in and the words "squalid" and "dog" had been scratched onto her car.  She reported this incident to the police but did not mention the Bolivarian Circles, because she remembered how the police had threatened her, when she had previously identified attackers as members of the group.  Her car again was vandalized in November 2008.  She had borrowed her husband's car because she was afraid the Bolivarian Circles would recognize hers.  She went to a store in an area where a pro-Chavez group was holding a demonstration.  When she came out, the car was completely scratched and the words "country," "socialism," and "death" were written on the windows in shoe polish.  ROA at 118.

---

[1] A "squalid" is a term for an "oligarch" or "puppet of the empire."  ROA at 75, 111.

3

The next threat occurred on July 28, 2009. Lucena Vasquez was returning from a Justice First event when she realized an SUV was following her, and it rammed the back of her car. When Lucena Vasquez pulled off the road, three men got out and told her, "[Y]ou're going to see what's going to happen to you, you damned squalid, you and your daughter." ROA at 122. Lucena Vasquez was able to drive away. While the men initially followed her, she eventually evaded them by taking side roads home. She attempted to report this incident to police the next day, but they would not investigate because she could not to provide a license plate number or some other type of identification.

Almost a year later, Lucena Vasquez was leaving a meeting and had her four-year-old daughter with her. When she arrived home, two men wearing the typical attire of the Bolivarian Circles forced their way through her gate. The men were there to kidnap her daughter. One of them pushed her against the wall and tried to grab the child. Lucena Vasquez, holding her daughter with one arm, attempted to fight off the man with her other arm. The man stated, "[N]ow we're going to really, really . . . fuck you up . . . you and your baby." ROA at 124. She told him to take the car and money, but the man called her a "damned, stupid woman," and hit her. ROA at 124. Fortunately, a neighbor saw the kidnapping in progress and intervened. The man attacking Lucena Vasquez pushed her and said: "[T]his will not stay like this. . . . Now you're going to see . . . what's going to

4

happen to you." ROA at 125. The neighbor called the police, but the police refused to take her complaint because there had not been a robbery or kidnapping. This incident left Lucena Vasquez severely frightened, and she sought psychological help.

The last two incidents occurred in September 2010. First, as Lucena Vasquez was leaving her psychologist's office, a friend told her that two men were there asking for her at the reception desk. As Lucena Vasquez was leaving the clinic, she noticed these men had scratched her car and left a note saying "we're going to kill you and your family." ROA at 127. Later that month, Lucena Vasquez had been working with other people to drive voters to polling booths. After she had voted in the election, a man on a motorcycle shouted, "[W]e told you that we're going to . . . fuck you up, you and your daughter." ROA at 130. This statement caused Lucena Vasquez to recall the attempted kidnapping, and she rushed to pick up her daughter.

Following these incidents, Lucena Vasquez told her husband she could no longer live in Venezuela. Lucena Vasquez and her family entered the United States on May 17, 2011. They were admitted as non-immigrant visitors and were authorized to remain until November 16, 2011.

B. Procedural Background

On June 28, 2011, Lucena Vasquez applied for asylum pursuant to the Immigration and Nationality Act ("INA") § 208(a), 8 U.S.C. § 1158(a), and withholding of removal under INA § 241(b)(3), 8 U.S.C. § 1231(b)(3), based on her political opinion and membership in a social group, and sought protection under CAT, 8 C.F.R. § 208.16(c).[2] On December 6, 2011, the Department of Homeland Security filed Notices to Appear with the immigration court and alleged Lucena Vasquez, along with her husband and daughter, were removable pursuant to INA § 237(a)(1)(B), 8 U.S.C. § 1227(a)(1)(B), because they remained in the United States for a time longer than permitted.

At a hearing before the IJ, Lucena Vasquez testified to the events described above in support of her application. She also testified that by returning to Venezuela, she believed she would be either tortured or killed. The IJ found Lucena Vasquez's testimony was credible, and the "alleged persecutory acts happened to her on account of her political opinion, her involvement in Justice First, and her opposition to the Hugo Chavez government and the Bolivarian Circles." ROA at 80. The IJ characterized this as "a very, very close case," but ultimately determined Lucena Vasquez had not established past persecution and

---

[2] Lucena Vasquez's application listed her husband and daughter as derivative beneficiaries. Although our opinion refers only to Lucena Vasquez, our holding as to the asylum claim applies equally to her husband and daughter. In view of our ruling on the asylum claim, we need not discuss the issues of withholding of removal or CAT relief.

6

denied her application.  ROA at 81.  The IJ also denied her CAT claim, because there had "been no testimony . . . that [Lucena Vasquez] would be tortured by or at the hands or with the acquiescence of a Venezuelan government official if she were returned to Venezuela."  ROA at 83-84.

Lucena Vasquez appealed to the BIA, which dismissed her appeal.  The BIA summarized the facts and cited to the IJ's decision.  The BIA "agree[d] with the Immigration Judge that [Lucena Vasquez] did not suffer past persecution."  ROA at 4.  The BIA cited precedent from this court and explained previous cases finding past persecution "contain[ed] at least one incident involving serious physical harm and a number of other incidents, not as severe," which "combine[d] to constitute past persecution."  ROA at 4 (citing *Mejia v. U.S. Att'y Gen.*, 498 F.3d 1253 (11th Cir. 2007); *Niftaliev v. U.S. Att'y Gen.*, 504 F.3d 1211 (11th Cir. 2007); *Ruiz v. Gonzales*, 479 F.3d 762 (11th Cir. 2007)).  It found Lucena Vasquez's "claims do not contain an incident of significant harm, notwithstanding the attempted kidnapping," and held Lucena Vasquez did not suffer the "degree [of] harm" required to establish past persecution.  ROA at 4.

## II. DISCUSSION

"We review only the BIA's decision, except to the extent the BIA expressly adopts the IJ's decision."  *Mu Ying Wu v. U.S. Att'y Gen.*, 745 F.3d 1140, 1153 (11th Cir. 2014) (alterations, citation, and internal quotations marks omitted). We

must affirm if the BIA's decision is supported by reasonable, substantial, and probative evidence when the record is considered as a whole. *Ruiz*, 479 F.3d at 765. In order to reverse, "we must find that the record not only supports the conclusion, but compels it." *Id.* (citation and internal quotation marks omitted).

The Attorney General may grant asylum to an alien who qualifies as a "refugee" within the meaning of INA. *Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1230 (11th Cir. 2005). A "refugee" is defined as one who is unable or unwilling to return to her home country, because of "persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." INA § 101(a)(42)(A), 8 U.S.C. § 1101(a)(42)(A). "[P]ersecution is an extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation." *Sepulveda*, 401 F.3d at 1231 (citation and internal quotation marks omitted).

Looking at the cumulative effect of all the incidents, the BIA must determine whether a petitioner has suffered treatment rising to the level of persecution. *Delgado v. U.S. Att'y Gen.*, 487 F.3d 855, 861 (11th Cir. 2007). "[E]ven though each instance of mistreatment, when considered alone, may not amount to persecution, the record may still compel a finding of past persecution when considered as a whole." *De Santamaria v. U.S. Att'y Gen.*, 525 F.3d 999, 1008 (11th Cir. 2008). Where a petitioner demonstrates repeated threats combined with

8

other forms of severe mistreatment, our precedent does not require serious physical injury in order to demonstrate past persecution. *Id.* at 1008-10.

A "well-founded fear" of future persecution may be established by showing (1) past persecution, which creates a presumption of a "well-founded fear" of future persecution, (2) a reasonable possibility of personal persecution that cannot be avoided by relocating within the subject country, or (3) a pattern or practice in the subject country of persecuting members of a statutorily defined group of which the petitioner is a part. 8 C.F.R. § 208.13(b)(1), (2). If the petitioner demonstrates past persecution, a rebuttable presumption arises that her "life or freedom" would again be threatened upon removal. 8 C.F.R. § 208.16(b)(1)(i). "This presumption arises 'on the basis of the original claim'; it does not require any showing on the part of the applicant of a likelihood of future persecution." *Antipova v. U.S. Att'y Gen.*, 392 F.3d 1259, 1264 (11th Cir. 2004) (quoting 8 C.F.R. § 208.16(b)(1)(i)). Once the petitioner demonstrates a "well-founded fear," the burden shifts to the government to show, by a preponderance of the evidence, (1) there is a fundamental change in circumstance such that the petitioner no longer has a well-founded fear of future persecution, or (2) the petitioner could avoid future persecution by relocating to another part of her country or place of last habitual residence and, under all the circumstances, it would be reasonable to do so. 8 C.F.R. § 208.13(b)(1)(i).

9

As the IJ recognized and the BIA noted, Lucena Vasquez presented testimony that was believable, consistent, and sufficiently detailed. *See Yang v. U.S. Att'y Gen.*, 418 F.3d 1198, 1202 (11th Cir. 2005) (noting the applicant "must, with specific and credible evidence, establish past persecution"). Upon review of Lucena Vasquez's detailed testimony, and with great respect to the IJ who believed this case to be "very, very close," ROA at 81, we find this case demonstrates past persecution.

The series of events culminating in the attempted kidnapping of her young child and the continued threats against her child's life establish Lucena Vasquez suffered past persecution because of her political opinion. Two men tried to rip Lucena Vasquez's young daughter from her arms and were stopped only by a neighbor's intervention. We can imagine little worse than being subjected to such a horrifying attempt as the kidnapping of a young child. Most parents would gladly subject themselves to kidnapping, torture, and even death, rather than to have their child kidnapped by evildoers.

This is not a case of a "few isolated incidents of verbal harassment or intimidation." *Sepulveda*, 401 F.3d at 1231 (citation and internal quotation marks omitted). Lucena Vasquez was attacked twice: once when her car was rammed by an SUV and once when a member of the Bolivarian Circles hit her in his attempt to kidnap her daughter. Given these assaults as well as the multiple verbal and

written threats Lucena Vasquez received, the perpetrators' acts cannot be considered "isolated." *See Mejia*, 498 F.3d at 1257-58 (concluding threats and attacks over an 18-month period that culminated in an attack at gunpoint constituted persecution).

In finding no past persecution, the BIA reasoned Lucena Vasquez had not suffered "significant physical harm," and therefore her case did not parallel our prior cases where there had been "at least one incident involving serious physical harm." ROA at 4. *De Santamaria*, however, has established that serious physical injury is not required to demonstrate past persecution, when there are physical threats combined with other forms of mistreatment such as kidnapping. 525 F.3d at 1008-10. The BIA failed to consider the cumulative effect of the attempted kidnapping of Lucena Vasquez's daughter, the attack while Lucena Vasquez was driving home with her daughter, and the multiple verbal and written threats Lucena Vasquez received. Considering the cumulative impact Lucena Vasquez suffered, we conclude past persecution was established, and the IJ and BIA erred in their conclusions to the contrary.[3] *Delgado*, 487 F.3d at 861-62 (finding that while the incidents including threatening phone calls, car vandalism, detention by masked men who pointed and mock fired unloaded guns at petitioners, and beatings, were

---

[3] While Lucena Vasquez also raises the argument that she demonstrated a well-founded fear of future persecution, we need not address this argument because we find she has demonstrated past persecution and is entitled to a rebuttable presumption of a "well-founded fear." 8 C.F.R. § 208.13(b)(1).

not individually enough to establish persecution, when considered together they did establish past persecution).

Because Lucena Vasquez has established past persecution, she is entitled to the rebuttable presumption of a well-founded fear of persecution in Venezuela. *Antipova*, 392 F.3d at 1264.  On remand, the government can decide whether or not to attempt to rebut this presumption.  8 C.F.R. § 208.13(b)(1)(ii).

### III. CONCLUSION

We grant the petition, vacate all the rulings made in these proceedings, and remand to the BIA for remand to the IJ for further proceedings consistent with this opinion.

**PETITION GRANTED; VACATED and REMANDED.**