[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 14-13302
Non-Argument Calendar

_____

Agency No. A098-706-675

EDWARD JOAQUIN CERVANTES CASTRO,
LINDA ALICIA BONDUEL-MARTINEZ,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(November 30, 2015)

Before HULL, ROSENBAUM, and JULIE CARNES, Circuit Judges.

PER CURIAM:

Petitioner Edward Cervantes Castro, a native and citizen of Venezuela, applied for asylum, withholding of removal, and relief under the United Nations Convention Against Torture ("CAT"). An immigration judge ("the IJ") denied the application on all grounds: a ruling subsequently affirmed by the Board of Immigration Appeals ("BIA").

Petitioner now appeals the above decisions, but we note that the request for withholding of removal is the only claim before us on appeal. As to Petitioner's application for asylum, the BIA's decision affirmed the IJ's denial on the ground that Petitioner's asylum application was not filed within one year of his arrival in the United States. Petitioner does not challenge the denial of asylum on appeal, and, in fact, he concedes that we lack jurisdiction to review the agency's determination that his asylum application was untimely filed and that his tardy filing was not excused by changed or extraordinary circumstances. *See* 8 U.S.C. § 1158(a)(3); *Ruiz v. Gonzales*, 479 F.3d 762, 765 (11th Cir. 2007). As to Petitioner's request for CAT relief, his brief does not support a challenge to that denial through substantive legal or factual argument. For that reason, we do not review the IJ or BIA's denial of that request. *See Mohammed v. Ashcroft*, 261 F.3d 1244, 1248 n.3 (11th Cir. 2001).

2

Our opinion is therefore limited to a review of the denial of Petitioner's application for withholding of removal, and we affirm the decision below denying that relief.

## I. __BACKGROUND__

In December 2003, Petitioner entered the United States on a visitor's visa that authorized him to remain in the United States for only six months.  In January 2005, having overstayed the period of time allowed him by his visa, Petitioner applied for asylum, withholding of removal, and CAT relief.[1]  Because Petitioner had remained in this country longer than authorized, the Department of Homeland Security issued Petitioner a notice to appear, charging him with removability pursuant to 8 U.S.C. § 1227(a)(1)(B), based on his having remained in the United States for a time longer than permitted.[2]

The IJ conducted a merits hearing on Petitioner's application for asylum and withholding of removal.  According to Petitioner's application and his testimony at

---

[1] He listed his wife, Linda Bonduel-Martinez, as a derivative beneficiary of any relief that he might obtain. Although a spouse can piggyback onto her husband's request for asylum, that claim is not before us.  Therefore, Petitioner's wife can seek no derivative relief as to it. Although the request to withhold removal is properly before us, the applicable statutes and regulations governing withholding of removal (and CAT) do not create derivative rights as to that relief.  Accordingly, as conceded by Petitioner, his wife is not a party to this appeal. *See Delgado v. U.S. Att'y Gen.*, 487 F.3d 855, 862 (11th Cir. 2007) (holding that withholding of removal does not create derivative rights); 8 C.F.R. § 208.16(c) (identifying eligibility of applicant, not derivative beneficiary, for CAT relief).

[2] Petitioner's wife was also served with a notice to appear, and she was a party to the removal proceedings before the IJ and BIA.  However, as previously explained, she is not a party to the present appeal.

the hearing, Petitioner was a member of the social Christian political party

("COPEI") and had helped the party's democratic coordinator by distributing fliers

about the party's events in the community.  He also participated in marches against

Venezuelan President Hugo Chavez and the Bolivarian Circles[3] to end

Communism and restore democracy.  In January 2003, members of the Bolivarian

Circles came to Petitioner's father's farm to try to take the land and harm

Petitioner because he opposed President Chavez's Communist ideology.  The

members of the Bolivarian Circles cursed at Petitioner and verbally threatened him

because they recognized him as opposing the government, but they did not

physically harm him.  A couple of days later, Petitioner received a phone call,

threatening him and his family with death if he returned to his father's land.

In February 2003, Petitioner was driving home when he was stopped by

three members of the Bolivarian Circles in a pickup truck.  One of the men got into

Petitioner's car and, pointing a handgun at him, forced Petitioner to pull over.  The

three men hit Petitioner and cursed at him for not supporting the president and for

handing out information in the communities.  After approximately five minutes,

the men stopped hitting Petitioner because there was a lot of traffic going through

the area and someone had seen Petitioner.  Petitioner spent the night in the hospital

and tried to file a complaint with the police, but when he mentioned that he was

---

[3]  According to Petitioner, the Bolivarian Circles were a group created by Chavez to "harm the population."

4

harmed by the Bolivarian Circles, the police laughed at him and would not accept his complaint.

In July 2003, Petitioner received another threatening phone call from the Bolivarian Circles. He was told that he could not hide and that "they" did not want him to go back to his lands or to hand out fliers.

On December 18, 2003, after Petitioner participated in a march calling for President Chavez's resignation, Petitioner and his now-wife were kidnapped by four men, two of whom were armed, while they were walking around trying to find the people that Petitioner had arranged to be at the march. The men were dressed like members of the Bolivarian Circles and one of them (a man with a Cuban accent) identified Petitioner by name. The men took Petitioner and his wife to a nearby house where six other people were already present. The man with the Cuban accent insulted Petitioner for working against the government. Petitioner was hit with a stick and kicked and one of the women was raped in front of everybody. Petitioner's wife was hit in the head, but not raped. The four men stopped the attack and fled when they heard police sirens. Petitioner told the police about what had happened and begged them to take him to a medical center, which they did. Petitioner's wife also testified about this incident, and her testimony was generally consistent with Petitioner's testimony.

Petitioner further testified that he and his wife got married on December 24, 2003, and left Venezuela for the United States on December 30, 2003, because Petitioner's wife had a "nervous crisis" and the doctor told her that she needed a change of environment. Petitioner claimed that he fears he will be killed if he returns to Venezuela. He alleged that, albeit almost seven years after he had left Venezuela, he heard that two people with Cuban accents went to his mother's house in June 2010, looking for him, and they damaged the house when they could not find him. He further heard that, in January 2012, eight years after his departure, "people" came to his mother's house again looking for him and they threatened to kill Petitioner's mother if she did not tell them where they could find Petitioner. Petitioner did not believe that President Chavez's death has changed the situation in Venezuela because his successor, President Nicolás Maduro, shares the same political views as President Chavez.

The IJ denied Petitioner's application for withholding of removal. The IJ first determined that Petitioner had not shown a nexus between his membership in the COPEI political party and the incidents he experienced or that he would be singled out in the future based on his political activities. Although the IJ found Petitioner to be credible, as a general matter, he concluded that Petitioner had not met his burden to establish eligibility for relief because (1) his testimony about the February 2003 incident was unreliable and his explanation was implausible and

6

(2) even though Petitioner and his wife's testimony was consistent regarding the December 2003 incident, the IJ was doubtful about what had occurred, noting that Petitioner did not present sufficient evidence—either through letters from witnesses or medical evidence—to corroborate this incident.

The BIA affirmed the IJ's decision, agreeing with the IJ that Petitioner's testimony was insufficiently detailed, consistent, or believable to provide a coherent account of his fears, and that Petitioner could therefore not establish eligibility for relief without corroborating evidence.  The BIA further agreed that Petitioner had not met his burden of proof to establish past persecution or a clear probability of future persecution on account of his political opinion.

## II.  DISCUSSION

Before this Court, Petitioner argues that (1) he sufficiently corroborated his testimony about the December 2003 incident; (2) he provided a reasonable explanation for the February 2003 incident; (3) the incidents he experienced cumulatively rose to the level of past persecution; and (4) he established a nexus between his political opinion and the incidents he experienced.

### A.    Standard of Review

We review the BIA's decision as the final judgment, unless the BIA has expressly adopted the IJ's decision.  *Lopez v. U.S. Att'y Gen.*, 504 F.3d 1341, 1344 (11th Cir. 2007).  If the BIA agrees with the IJ's reasoning, we also review the

decision of the IJ to the extent of that agreement. *Kazemzadeh v. U.S. Att'y Gen.*, 577 F.3d 1341, 1350 (11th Cir. 2009). Here, the BIA issued its own opinion, but agreed with several aspects of the IJ's reasoning. Thus, we review the BIA's decision and the decision of the IJ to the extent of that agreement. *See id.*

We review factual findings for substantial evidence. *Forgue v. U.S. Att'y Gen.*, 401 F.3d 1282, 1286 (11th Cir. 2005). Under the substantial evidence test, we must affirm a determination "if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Id.* (quotation omitted). The evidence is viewed in the light most favorable to the agency's decision, drawing all reasonable inferences in favor of that decision. *Id.* In other words, we will only reverse a factual finding if the record compels reversal. *Id.* at 1287. The fact that evidence in the record may also support a conclusion contrary to the administrative findings does not justify reversal. *Adefemi v. Ashcroft*, 386 F.3d 1022, 1027–29 (11th Cir. 2004) (*en banc*).

## B.    Burden of Proof

To qualify for withholding of removal, an applicant must establish that his life or freedom would be threatened in his country of origin on account of the alien's race, religion, nationality, membership in a particular social group, or political opinion. *See* 8 U.S.C. § 1231(b)(3)(A). The burden is on the alien to show a clear probability of future persecution, meaning that it is "more likely than

8

not" that he will be persecuted or tortured if returned to his country. *Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1232 (11th Cir. 2005).

An alien may satisfy his burden of proof for withholding of removal in two ways. First, an alien may establish past persecution based on a protected ground. *See Sanchez v. U.S. Att'y Gen.*, 392 F.3d 434, 437 (11th Cir. 2004). Past persecution creates a rebuttable presumption that his life or freedom would be threatened upon return to his country. *See id.* Second, if an alien does not show past persecution, he may still be entitled to withholding of removal if he establishes that it is more likely than not that he would be persecuted upon removal due to a protected ground. *Id.* In addition to establishing past persecution or a well-founded fear of future persecution, an applicant also must establish a nexus between the persecution and a statutorily-protected ground. *See Al Najjar v. Ashcroft*, 257 F.3d 1262, 1287 (11th Cir. 2001).

"[P]ersecution is an extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation, and . . . mere harassment does not amount to persecution." *Sepulveda*, 401 F.3d at 1231 (quotations and alteration omitted). We have concluded that threats in conjunction with brief detentions or a minor physical attack that did not result in serious physical injury do not rise to the level of persecution. *See, e.g., Kazemzadeh*, 577 F.3d at 1353 (arrest, five-hour interrogation and beating, followed by four-day detention was not persecution);

9

*Djonda v. U.S. Att'y Gen.*, 514 F.3d 1168, 1171, 1174 (11th Cir. 2008) (36-hour detention, beating, and threat of arrest was not persecution); *Zheng v. U.S. Att'y Gen.*, 451 F.3d 1287, 1290–91 (11th Cir. 2006) (five-day detention, in addition to being forced to watch anti-Falun Gong reeducation videos, stand in the sun for two hours, and sign a statement vowing to no longer practice Falun Gong was not persecution).

An applicant's testimony, if credible, may be sufficient to sustain his burden of proof, even without corroborating evidence. *Forgue*, 401 F.3d at 1287. In pre-REAL ID Act cases such as this one,[4] a petitioner with credible, consistent, and detailed testimony may not be denied asylum solely based on his failure to produce corroborative evidence. *Niftaliev v. U.S. Att'y Gen.*, 504 F.3d 1211, 1216–17 (11th Cir. 2007). But, the "weaker an applicant's testimony . . . the greater the need for corroborative evidence." *Yang v. U.S. Att'y Gen.*, 418 F.3d 1198, 1201 (11th Cir. 2005). Weak testimony is testimony that is not "believable, consistent, and sufficiently detailed . . . so as to provide a plausible and coherent account of the basis for [the petitioner's] alleged fear." *Matter of Y-B-*, 21 I. & N. Dec. 1136,

---

[4] The REAL ID Act of 2005 amended the Immigration and Nationality Act regarding the burden of proof, credibility determinations, and corroborating evidence. *See* Pub.L. No. 109-13, § 101(a)(3), 119 Stat. 231, 303, 305-06 (codified at 8 U.S.C. §§ 1158(b)(3)(B)(iii), 1229a(c)(4)(C)). The REAL ID Act states that these particular provisions "shall apply to applications for asylum, withholding [of removal], [and] other relief from removal made on or after" the enactment date of May 11, 2005. *Id.* § 101(h)(2), 119 Stat. at 305. Thus, because Petitioner's application for withholding of removal was filed in January 2005, this section of the REAL ID Act does not apply to his application.

1137 (BIA 1998). Even if credible, and internally consistent, an applicant's testimony can sometimes fail to warrant relief if unaccompanied by additional information regarding a claim. *See id.* at 1137–39. The BIA has indicated that a petitioner generally should provide documentary support for material facts that are central to his claim and "easily subject to verification." *Matter of S-M-J-*, 21 I. & N. Dec. 722, 725–26 (BIA 1997) (*en banc*), *overruled on other grounds by Ladha v. INS*, 215 F.3d 889, 898 (9th Cir. 2000).

Here, substantial evidence supports the IJ's and BIA's determination that Petitioner failed to meet his burden to prove eligibility for withholding of removal. As to the February 2003 incident, the IJ and BIA found that Petitioner's testimony was unreliable and implausible (and thus needed to be corroborated) because it simply made no sense that Petitioner's attackers would choose to assault him in a highly-travelled area, but then let him go because they happened to be in a busy, highly-populated area. Accordingly, given the unreliability and implausibility of his testimony, Petitioner needed to provide corroboration, and he failed to do so.

Indeed, on appeal, Petitioner does not point to any evidence that corroborated this incident, but instead argues that the IJ and BIA erred in concluding that his testimony was unbelievable. He attempts to explain that while perhaps seemingly implausible on a first glance, there is an explanation that renders his account more plausible. Specifically, although very busy, the cars on

11

the street where the attack occurred were traveling very fast and the drivers' views were obstructed by a kiosk. But when traffic forced a driver to slow down or stop, that driver would have been able to see the assault. The fact that Petitioner provides a "tenable" explanation for the doubtful portion of his testimony does not, however, compel reversal of the IJ and BIA's implausibility determination, particularly in the absence of corroborative evidence. *See Chen v. U.S. Att'y Gen.*, 463 F.3d 1228, 1233 (11th Cir. 2006).

With respect to the December 2003 incident involving an alleged assault of Petitioner and his wife while attending a political march, the IJ acknowledged that their testimony was detailed and consistent. But consistency on details notwithstanding, the IJ was suspicious of this testimony and doubtful that events occurred as described by Petitioner and his spouse. The IJ found it unlikely that Petitioner, who held no significant position within the COPEI political party, would be specifically targeted merely because he happened to be marching along 5,000 other people. The IJ also noted that Petitioner offered no reliable information confirming that they were beaten as they claimed to have been or that he or his wife had sought medical attention. As to the latter, the IJ and BIA expressed skepticism that the same doctor would have attested to both Petitioner's physical injuries—contusions and hematomas to the abdomen, glutes, and lower extremities—and his wife's symptoms of depression. The IJ and BIA further

12

indicated that Petitioner should have readily been able to obtain statements corroborating his testimony that the incident and the alleged resulting injuries did in fact occur.

Given the IJ's skepticism regarding Petitioner's account about the December 2003 incident, the fact that his wife's testimony was generally consistent with Petitioner's testimony does not compel reversal of the IJ's determination that further corroboration was needed. *See Yang*, 418 F.3d at 1201 (providing that weaker testimony requires a greater need for corroboration). And contrary to Petitioner's contentions on appeal, the record clearly reflects that the IJ was well aware of Petitioner's wife's consistent testimony, but she nonetheless still had concerns about the credibility and sufficiency of the evidence Petitioner offered. In addition, Petitioner has given no indication that he could not have readily obtained further corroborating evidence from his and his wife's family members. *See Matter of S-M-J-*, 21 I. & N. Dec. at 725–26. As to the medical evidence presented, as noted by the IJ and BIA, such evidence is dubious at best because it was prepared by the same doctor despite the fact that Petitioner was allegedly treated for physical injuries, while his wife was treated for depression. Petitioner indicated in his application that his wife had seen a psychologist, and it appears questionable that a psychologist would have also assessed Petitioner's physical injuries.

Furthermore, Petitioner's argument that the State Department Country Report's description of the political conditions in Venezuela corroborates his claims is misplaced. The question is whether Petitioner sufficiently corroborated the specific incidents that he personally experienced. A Country Report provides no corroboration of any of the incidents Petitioner claimed to have personally experienced. *Cf. Mohammed v. U.S. Att'y Gen.*, 547 F.3d 1340, 1346 (11th Cir. 2008) (concluding that general evidence showing that human rights abuses occur in a country was not specific to petitioner, and thus did not establish that petitioner had a well-founded fear of future persecution).

In any event, even if Petitioner had met his burden of establishing that the December 2003 incident occurred in the manner in which he and his wife testified, the record does not compel a conclusion that the IJ and BIA erred when they found that Petitioner failed to meet his burden of proof to establish that he suffered past persecution on account of his political opinion. *See Forgue*, 401 F.3d at 1286–87. When compared with this Court's precedent, Petitioner's brief kidnapping and a beating that did not result in serious physical injury, done in conjunction with verbal threats to stay away from his father's farm, do not individually or cumulatively rise to the level of past persecution. *See Kazemzadeh*, 577 F.3d at

14

1353; *Djonda*, 514 F.3d at 1171, 1174; *Zheng*, 451 F.3d at 1290–91; *Sepulveda*, 401 F.3d at 1231.[5]

Because Petitioner did not establish past persecution, he is not entitled to a presumption of future persecution. *See Sanchez*, 392 F.3d at 437. Absent this presumption, the record, including Petitioner's testimony that members of the Bolivarian Circles visited his mother's home in 2010 and 2012, does not compel reversal of the BIA's and IJ's determination that Petitioner failed to establish a clear probability of future persecution. *Id.* Accordingly, substantial evidence supports the BIA's denial of Petitioner's application for withholding of removal, and we deny the petition for review.

**PETITION DENIED.**

---

[5] Because Petitioner failed to establish that the incidents he experienced rose to the level of past persecution, there is no need for this Court to consider whether the IJ and BIA erred in its conclusion that Petitioner failed to establish a nexus between his political opinion and the past persecution. *See Al Najjar*, 257 F.3d at 1287 (requiring petitioner to show that his harm or suffering rises to the level of past persecution).