[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-14980
Non-Argument Calendar
_____

Agency No. A208-571-823


YE ENJIE,
a.k.a. Enjie Ye,

                                                            Petitioner,

versus

U.S. ATTORNEY GENERAL,

                                                            Respondent.


_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(September 5, 2018)

Before MARTIN, JILL PRYOR, and EDMONDSON, Circuit Judges.


PER CURIAM:

Ye Enjie ("Petitioner"), a native and citizen of China, petitions for review of the order by the Board of Immigration Appeals ("BIA") affirming the decision of the Immigration Judge ("IJ").  The IJ's decision denied asylum and withholding of removal.[1]  No reversible error has been shown; we deny the petition.

We review only the decision of the BIA, except to the extent that the BIA adopts expressly the IJ's decision.  Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001).  Because the BIA agreed expressly with the IJ's reasoning in this case, we review both the IJ's and the BIA's decisions.  See id.

We review fact determinations under the "highly deferential substantial evidence test" whereby we "must affirm the BIA's decision if it is 'supported by reasonable, substantial, and probative evidence on the record considered as a whole.'"  Adefemi v. Ashcroft, 386 F.3d 1022, 1026-27 (11th Cir. 2004) (en banc). We "view the record evidence in the light most favorable to the agency's decision and draw all reasonable inferences in favor of that decision."  Id. at 1027.  To reverse a fact determination, we must conclude "that the record not only supports reversal, but compels it."  Mendoza v. United States Att'y Gen., 327 F.3d 1283, 1287 (11th Cir. 2003).

---

[1] The IJ also denied relief under the Convention Against Torture.  We will not address this claim, however, because Petitioner failed to challenge this denial in his appeal to the BIA and has failed to raise the issue on appeal.  See Amaya-Artunduaga v. United States Att'y Gen., 463 F.3d 1247, 1250-51 (11th Cir. 2006); Sepulveda v. United States Att'y Gen., 401 F.3d 1226, 1228 n.2 (11th Cir. 2005).

An alien may obtain asylum if he is a "refugee," that is, a person unable or unwilling to return to his county of nationality "because of persecution or a well-founded fear of persecution on account of" a protected ground, including religion. 8 U.S.C. §§ 1101(a)(42)(A).  The asylum applicant bears the burden of proving statutory "refugee" status.  Ruiz v. United States Att'y Gen., 440 F.3d 1247, 1257 (11th Cir. 2006).  To do so, he must present "specific and credible evidence" demonstrating that he (1) was persecuted in the past based on a protected ground, or (2) has a well-founded fear that he will be persecuted in the future based on a protected ground.  Id.

Petitioner alleges he suffered past persecution by the Chinese government on account of his religion.  Petitioner is a Christian and was a member of an underground "house church" in China.  In March 2015, Petitioner and nine fellow churchgoers were arrested while attending a house church gathering.  At the police station, officers told the churchgoers they had been arrested for holding an illegal religious gathering.  The churchgoers were then placed together in a small cell with a shared toilet.  Petitioner's parents later came to the police station and paid to have Petitioner released.

During Petitioner's fifteen-day detention, officers provided the churchgoers a small amount of food and water three times a day.  Neither Petitioner nor his

fellow churchgoers were interrogated or beaten. Petitioner suffered no physical injuries during his detention.

Upon his release from confinement, officers required Petitioner to promise not to attend illegal religious gatherings and ordered him to report weekly to the police station. Petitioner reported weekly to the police station for about one month; each meeting lasting about five minutes, and Petitioner was not harmed. During the meetings, officers asked Petitioner about his religious activities, and Petitioner reported falsely that he was no longer attending a house church. The officers threatened Petitioner with severe punishment if he attended a house church again.

In May 2015, Petitioner moved to Guangzhou to live at a friend's home. When Petitioner failed to report to the police station, officers visited Petitioner's parents' home two or three times a week inquiring about Petitioner's whereabouts and warning that Petitioner would be in trouble if found. The police last visited Petitioner's parents' home in early 2016, just before Petitioner's arrival in the United States.

Petitioner remained in Guangzhou for about six months. During that time, Petitioner worked part time and said he was able to come and go freely. Petitioner said he did not participate in house church activities while in Guangzhou because he was unfamiliar with the city and could find no house church to attend.

4

Petitioner then decided to leave China and arrived in the United States in February 2016.

The IJ denied Petitioner's application for asylum and for withholding of removal.  The IJ determined, in pertinent part, that the events Petitioner complained of did not rise to the level of past persecution.  The IJ also concluded that Petitioner showed no objective well-founded fear of future persecution.  The BIA agreed with the IJ's reasoning.

After review, we conclude that substantial evidence supports the finding that Petitioner demonstrated no past persecution; and we are not compelled to reverse the decision.  We have explained that persecution is an "extreme concept" that "requires more than a few isolated incidents of verbal harassment or intimidation, unaccompanied by any physical punishment, infliction of harm, or significant deprivation of liberty."  Shi v. United States Att'y Gen., 707 F.3d 1231, 1235 (11th Cir. 2013).

Viewed cumulatively, the mistreatment Petitioner experienced is insufficiently extreme to rise to the level of past persecution, particularly given the absence of physical injury or threats of physical harm.[2]  The mistreatment in this case is on par with the abuse involved in Zheng v. United States Att'y Gen., 451 F.3d 1287 (11th Cir. 2006).  In Zheng, we concluded that a petitioner suffered no

_____

[2] The only physical harm Petitioner suffered was being struck unintentionally by the front door as police entered the house church meeting.

5

past persecution when he (1) was arrested for his involvement in Falun Gong; (2) was detained for five days during which he was forced to watch and read anti-Falun Gong materials, forced to stand in the sun for two hours, and required to pledge not to practice Falun Gong under penalty of imprisonment, but was otherwise unharmed; (3) lost his job; and (4) was subjected to periodic searches. 451 F.3d at 1290-91 (citing decisions in which incidents of detentions (including a 14-day detention), beatings, and deprivation of food constituted no persecution).

That Petitioner's fifteen-day detention was longer than the detention involved in Zheng does not change the decision.  Especially given that Petitioner (like Zheng) remained physically unharmed during his detention, we are not compelled to conclude that Petitioner's detention rose to the level of persecution. Cf. Niftaliev v. United States Att'y Gen., 504 F.3d 1211, 1217 (11th Cir. 2007) (concluding that the cumulative effect of numerous beatings, arrests, searches, and interrogations, which culminated in a fifteen-day detention during which petitioner was deprived of food, beaten, and threatened at gunpoint, constituted persecution).

The lack of specific physical harm suffered by Petitioner also distinguishes this case from the circumstances involved in Shi v. United States Att'y Gen., 707 F.3d 1231 (11th Cir. 2013).  The petitioner in Shi suffered these harms: (1) police interrupted a gathering at a house church, confiscated the group's bibles, and arrested the churchgoers; (2) police detained petitioner for seven days; (3) police

6

twice interrogated petitioner, during which they slapped him in the face, kicked his chair out from under him, and threatened to beat him with a baton; and (4) police handcuffed petitioner to an iron bar overnight outside in the rain, after which petitioner became so sick that the police released him for fear he would die in custody. 707 F.3d at 1232-33. We determined that the cumulative effect of these harms compelled a finding of past persecution, focusing in particular on the "singularly cruel" interrogation tactic of handcuffing petitioner overnight in the rain and the resulting physical injuries. See id. at 1237-39.

Petitioner argues -- based on language in the opinion in Kazemzadeh v. United States Att'y Gen., 577 F.3d 1341 (11th Cir. 2009) -- that he suffered persecution because he was forced to practice his faith in secret. In Kazemzadeh, we -- facing a case where an Iranian Muslim had converted to Christianity, an act punishable by death in Iran -- said that "having to practice religion underground to avoid punishment is itself a form of persecution." 577 F.3d at 1354. The level of potential punishment for petitioner's practicing Christianity was an important fact in Kazemzadeh. Kazemzadeh did not decide -- and no court has construed Kazemzadeh as establishing a hard-edged rule -- that evidence a petitioner has practiced his faith underground to avoid some trouble is in itself always sufficient to compel a finding of past persecution, that extreme concept that warrants asylum relief. Instead, we concluded in Kazemzadeh only that the BIA and the IJ erred by

7

failing to consider in that case all pertinent evidence (on fear of persecution based on petitioner's religion) submitted by the petitioner -- a person with a history of political action that might also draw special attention to his religious conversion. Id. at 1345, 1354.  The case was remanded for consideration of certain evidence and more fact finding.

In this case, substantial evidence also supports a finding that Petitioner has demonstrated no well-founded fear of future persecution based on his religious activities.  To show a well-founded fear of future persecution, Petitioner must establish that his fear both is "subjectively genuine and objectively reasonable." Al Najjar, 257 F.3d at 1289.  "[T]he objective prong can be fulfilled either by establishing past persecution or that he or she has a good reason to fear future persecution." Id. (quotation omitted).

Petitioner testified that he traveled from his hometown to Guangzhou, remained there for six months without incident, obtained employment, and moved about freely.  Although Petitioner did not attend a house church while in Guangzhou, he said it was because he was unfamiliar with the area, not because he feared police interference.  Since Petitioner left China, the police have not returned to Petitioner's parents' house asking about him.  Petitioners' parents also continue to live in the same hometown and have continued to practice their Christian faith without interference.  See Ruiz, 440 F.3d at 1259 (a petitioner's claim of future

8

persecution is undercut when the petitioner's family remained unharmed in the region).

Petitioner points to the Department of State's 2015 International Religious Freedom Report, which reported incidents in which the Chinese government tortured, abused, detained, and harassed members of both registered and unregistered churches.  But the report also stated that the restrictions on religious freedom -- including participating in unregistered churches -- varies by region and that some areas "tacitly approve of" unregistered church activities.  Petitioner's evidence does not compel the conclusion that he will be subjected to future persecution throughout China, if he returns.

Substantial evidence supports the IJ's and BIA's decisions that Petitioner was unentitled to asylum; and we are not compelled to reverse the decisions. Petitioner's failure to establish eligibility for asylum forecloses his eligibility for withholding of removal.  See Forgue v. United States Att'y Gen., 401 F.3d 1282, 1288 n.4 (11th Cir. 2005).

PETITION DENIED.

9